MILWAUKEE COUNTY, a municipal body corporate,
Plaintiff-Appellant,

v.

MILWAUKEE DISTRICT COUNCIL 48—AMERICAN FEDERA-
TION OF STATE, COUNTY & MUNICIPAL EMPLOYEES,
AFL–CIO; Joseph Robison, individually and as Ex-
ecutive Director of Milwaukee District Council 48,
AFSCME, AFL–CIO; and Wisconsin Employment
Relations Commission, Defendants-Respondents,

COALITION OF AMERICAN PUBLIC EMPLOYEES (CAPE);
Professional Fire Fighters of Wisconsin; Wiscon-
sin Council of County & Municipal Employees,
Dist. Council 40, AFSCME, AFL–CIO; Wisconsin
County Police Association; Wisconsin Professional
Policemen's Association (WPPA); and Wisconsin
State Employees Union, District Council 24, AFS-
CME, AFL–CIO, Intervenors,

WISCONSIN EDUCATION ASSOCIATION COUNCIL,
Additional Intervenors.†

Court of Appeals

*No. 81–1185. Argued April 26, 1982.—Decided September 7, 1982.*
(Also reported in 325 N.W.2d 350.)

---

† Petition to review denied.

For the appellant there was a brief by *George E. Rice,* deputy corporation counsel, Milwaukee County, and *Patrick J. Foster,* principal assistant corporation counsel, and oral argument by Mr. Foster.

For respondents Milwaukee District Council 48 and Joseph Robison there was a brief by *Alvin R. Ugent, Su-*

*zanne Schalig* and *Podell, Ugent & Cross, S.C.,* of Milwaukee.

For respondent Wisconsin Employment Relations Commission the cause was argued by *David C. Rice,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

For the intervenors there was a brief by *Richard V. Graylow* and *Lawton & Cates* of Madison.

For additional intervenor Wisconsin Education Association Council there was a brief by *Bruce Meredith,* staff counsel.

Brief amicus curiae of the Wisconsin County Boards Association was filed by *Thomas A. Schroeder,* legal counsel.

Brief amicus curiae of the League of Wisconsin Municipalities was filed by *Burt P. Natkins,* legal counsel.

Before Foley, P.J., Dean and Cane, JJ.

CANE, J. The primary issue on appeal is whether the mediation-arbitration provisions of the Municipal Employment Relations Act, sec. 111.70(4)(cm), Stats., is a constitutional delegation of authority. Because we conclude it is, we affirm.

Milwaukee County and Milwaukee District Council 48 (Council) attempted to negotiate a collective bargaining agreement for 1981 and subsequent years. During these negotiations, the Council petitioned the Wisconsin Employment Relations Commission (WERC) for mediation-arbitration pursuant to the Municipal Employment Relations Act (MERA), sec. 111.70, Stats.[1] A mediator was

---

[1] Section 111.70(4)(cm), Stats., provides, in part:

6. "Mediation-Arbitration." If a dispute has not been settled after a reasonable period of negotiation and after mediation by the commission . . . and other settlement procedures, if any, established by the parties have been exhausted, and the parties are deadlocked with respect to any dispute between them over wages, hours and conditions of employment to be included in a new col-

appointed pursuant to MERA to determine whether an impasse in negotiations required the appointment of a mediator-arbitrator.

lective bargaining agreement, either party, or the parties jointly, may petition the commission, in writing, to initiate mediation-arbitration, as provided in this section.

a. Upon receipt of a petition to initiate mediation-arbitration, the commission shall make an investigation . . . to determine whether mediation-arbitration should be commenced. . . . Prior to the close of the investigation each party shall submit in writing its single final offer containing its final proposals on all issues in dispute to the commission. Such final offers may include only mandatory subjects of bargaining. Permissive subjects of bargaining may be included by a party if the other party does not object and shall then be treated as a mandatory subject. No later than such time, the parties shall also submit to the commission a stipulation, in writing, with respect to all matters which are agreed upon for inclusion in the new or amended collective bargaining agreement. The commission, after . . . determining that mediation-arbitration should be commenced, shall issue an order requiring mediation-arbitration and immediately submit to the parties a list of 5 mediator-arbitrators. Upon receipt of such list, the parties shall alternately strike names until a single name is left, who shall be appointed as mediator-arbitrator. . . . [T]he commission shall formally appoint the mediator-arbitrator and submit to him or her the final offers of the parties . . . .

b. The mediator-arbitrator shall, within 10 days of his or her appointment, establish dates and places for the conduct of mediation-arbitration sessions. Upon petition of at least 5 citizens of the jurisdiction served by the municipal employer, filed within 10 days of the date on which the mediator-arbitrator is appointed, the arbitrator shall hold a public hearing in the jurisdiction for the purpose of providing the opportunity to both parties to explain or present supporting arguments for their positions and to members of the public to offer their comments and suggestions. The final offers of the parties, as transmitted by the commission to the mediator-arbitrator, shall serve as the initial basis for mediation and continued negotiations between the parties with respect to the issues in dispute. During such time, the mediator-arbitrator . . . shall endeavor to mediate the dispute and encourage a voluntary settlement by the parties. During such period of mediation and continued negotiations, either party, with the consent of the

Milwaukee County then filed an action in circuit court for a temporary injunction declaring sec. 111.70 (4) (cm)

other party, may modify its final offer in writing.

c. If the parties have failed to reach a voluntary settlement after a reasonable period for mediation as determined by the mediator-arbitrator, the mediator-arbitrator shall provide written notification to the parties and the commission of his or her intent to resolve the dispute by final and binding arbitration. Thereafter, either party may, within a time limit established by the mediator-arbitrator, withdraw its final offer and mutually agreed upon modifications thereof . . . . If both parties withdraw their final offers and mutually agreed upon modifications, the labor organization . . . may strike. Unless both parties withdraw their final offers and mutually agreed upon modifications, the final offer of neither party shall be deemed withdrawn and the mediator-arbitrator shall proceed to resolve the dispute by final and binding arbitration as provided in this paragraph.

d. Before issuing his or her arbitration decision, the mediator-arbitrator acting as arbitrator shall, on his or her own motion or at the request of either party, conduct a meeting open to the public for the purpose of providing the opportunity to both parties to explain or present supporting arguments for their complete offer on all matters to be covered by the proposed agreement. The mediator-arbitrator acting as arbitrator shall adopt without further modification the final offer of one of the parties on all disputed issues . . . except those items that the commission determines not to be mandatory subjects of bargaining and those items which have not been treated as mandatory subjects by the parties, and including any prior modifications of such offer mutually agreed upon by the parties . . . which decision shall be final and binding on both parties and shall be incorporated into a written collective bargaining agreement. The mediator-arbitrator acting as arbitrator shall serve a copy of his or her decision on both parties and the commission.

. . . .

f. The costs of mediation-arbitration shall be divided equally between the parties. . . .

7. "Factors considered." In making any decision under the arbitration procedures authorized by this subsection, the mediator-arbitrator shall give weight to the following factors:

a. The lawful authority of the municipal employer.

b. Stipulations of the parties.

unconstitutional because it illegally delegates legislative authority. The court denied the request for a temporary injunction, and both sides moved for summary judgment. The circuit court granted the Council's motion for summary judgment declaring sec. 111.70 (4) (cm) constitutional, and, as applied, a lawful delegation of authority. Because of the statewide importance of this issue, we accepted amicus curiae briefs from the Wisconsin County Board's Association, the League of Wisconsin Municipalities, and intervention by other captioned organizations.

c. The interests and welfare of the public and the financial ability of the unit of government to meet the costs of any proposed settlement.

d. Comparison of wages, hours and conditions of employment of the municipal employes involved in the arbitration proceedings with the wages, hours and conditions of employment of other employes performing similar services and with other employes generally in public employment in the same community and in comparable communities and in private employment in the same community and in comparable communities.

e. The average consumer prices for goods and services, commonly known as the cost-of-living.

f. The overall compensation presently received by the municipal employes, including direct wage compensation, vacation, holidays and excused time, insurance and pensions, medical and hospitalization benefits, the continuity and stability of employment, and all other benefits received.

g. Changes in any of the foregoing circumstances during the pendency of the arbitration proceedings.

h. Such other factors, not confined to the foregoing, which are normally or traditionally taken into consideration in the determination of wages, hours and conditions of employment through voluntary collective bargaining, mediation, fact-finding, arbitration or otherwise between the parties, in the public service or in private employment.

8. "Rule-making." The commission shall adopt rules for the conduct of all mediation-arbitration proceedings . . . and proceedings for the enforcement of arbitration decisions of the mediator-arbitrator. Chapter 788 does not apply to such arbitration proceedings.

## STANDING TO CHALLENGE

■

One issue raised is whether Milwaukee County has standing to challenge the constitutionality of MERA. The general rule is that a state agency or municipality cannot challenge the constitutionality of a statute. *City of Madison v. Ayres,* 85 Wis. 2d 540, 544, 271 N.W.2d 101, 103 (1978). Because the state has created counties as agencies exercising those governmental powers entrusted to them, the right of a county to challenge legislative acts is also restricted. *Brown County v. Department of Health & Social Services,* 103 Wis. 2d 37, 43, 307 N.W.2d 247, 250 (1981). This general rule, however, is subject to two exceptions:

(1) If it is the agency's official duty to appeal, or the agency will be affected if it fails to do so and the statute is held invalid; *State ex rel. City of La Crosse v. Rothwell,* 25 Wis. 2d 228, 233, 130 N.W.2d 806, 808–09 (1964). This exception applies only to cases between private litigants and a municipality or state agency, *County of Dane v. Wisconsin Dep't of Health & Soc. Serv.,* 79 Wis. 2d 323, 331, 255 N.W.2d 539, 544 (1977); and

(2) If the issue is of great public concern; *Rothwell,* at 233, 130 N.W.2d at 809.

■

Both exceptions apply in this case. This is a dispute between a municipality, Milwaukee County, and private litigants, Milwaukee District Council 48. Also, the county will be affected if MERA is held invalid. Finally, MERA was enacted in response to the controversial public employee strikes throughout Wisconsin, and the statute affects the entire nature of negotiations between municipalities and their employees. Both sides therefore agree that the statutory procedure for binding arbitration is an issue of great public concern.

It is also argued that Milwaukee County is estopped from challenging the statute because it participated in arbitration and enjoyed the statutory benefits of the statute. One may not retain the benefits of a statute and subsequently attack its constitutionality. *State v. Keehn,* 74 Wis. 2d 218, 222, 246 N.W.2d 547, 549 (1977). Here, however, Milwaukee County did initially challenge MERA before the circuit court; it participated in the arbitration only after the circuit court ordered it to do so. This is not a situation where the county employed the statute to determine the arbitration results and then attacked its constitutionality. Accordingly, the principle of estoppel does not apply to defeat Milwaukee County's constitutional challenge.

## CONSTITUTIONALITY OF MERA

The central issue is the constitutionality of MERA. Milwaukee County contends that MERA is an unconstitutional delegation of legislative authority for three reasons.

First, Milwaukee County contends article IV, section 22, of the Wisconsin Constitution requires that a delegation by the legislature of local and legislative matters affecting counties must be made to the county board of supervisors.[2] It argues that arbitrators' decisions under the statute are legislative in nature. Support for this argument has been recognized in a case involving the constitutionality of Utah's Fire Fighters Negotiation Act, which provided for an arbitration panel. The Utah court concluded that because the panel's decision affects the

---

[2] Article IV, § 22, of the Wisconsin Constitution provides:
The legislature may confer upon the boards of supervisors of the several counties of the state such powers of a local, legislative and administration character as they shall from time to time prescribe.

allocation of public resources, the level of public services provided, the costs of government, and consequently may necessitate an increase in taxes, such decisions are legislative-political. *Salt Lake City v. International Ass'n of Firefighters, Locals 1645, 593, 1654, and 2064,* 563 P.2d 786 (Utah 1977). A similar result was reached in *Dearborn Fire Fighters Union, Local No. 412 v. City of Dearborn,* 231 N.W.2d 226 (Mich. 1975). Although an arbitrator acting under the statutes in this case does not have authority to levy taxes, Milwaukee County reasons that the practical effect of the arbitrator's decision may force Milwaukee County to increase its taxes, which would imply that the arbitrator's decision was legislative-political.

Second, Milwaukee County contends the statute is unconstitutional because the arbitrator is not accountable to the electorate. Milwaukee County supports this contention by again citing *Dearborn, Salt Lake City,* and *Town of Berlin v. Santiguida,* 98 LRRM 3259 (Conn. Super. Ct. 1978), which held that officials engaged in governmental decision-making, e.g., setting budgets, salaries, and other terms and conditions of public employment, must be accountable to the citizens they represent. These cases conclude that binding arbitration removes such decisions from the elected officials and unlawfully places them in the hands of an outsider who has no accountability to the public. Milwaukee County urges us to adopt the same rationale and declare the statute unconstitutional.

Finally, Milwaukee County contends that the statute is unconstitutional because it does not provide adequate procedural and judicial safeguards. Milwaukee County argues that MERA makes no provision for meaningful judicial review, and that even the limited judicial review opportunities found in ch. 788, Stats., are expressly prohibited by sec. 111.70(4)(cm)8.

In determining the validity of Milwaukee County's constitutional challenge, we are mindful of the established principle that a strong presumption of constitutionality attaches to all legislative acts. One attacking a statute's validity has the burden of demonstrating its unconstitutionality beyond a reasonable doubt. Every presumption must be indulged to sustain the law if possible, and all doubts must be resolved in favor of constitutionality. *Modern v. McGinnis,* 70 Wis. 2d 1056, 1072, 236 N.W.2d 240, 246 (1975); *Jenks v. DILHR,* 107 Wis. 2d 714, 723, 321 N.W.2d 347, 352 (Ct. App. 1982).

Our supreme court has determined that a delegation of authority will be upheld if three tests are satisfied:

(1) The legislative purpose is ascertainable. *Watchmaking Examining Bd. v. Husar,* 49 Wis. 2d 526, 534–36, 182 N.W.2d 257, 262 (1971);
(2) There are sufficient standards to limit the exercise of such power. *Wisconsin Solid Waste Recycling Authority v. Earl,* 70 Wis. 2d 464, 235 N.W.2d 648, 666 (1975);
(3) There are procedural and judicial safeguards. *Westring v. James,* 71 Wis. 2d 462, 468, 238 N.W.2d 695, 698 (1976).

### Legislative Purpose

The legislative purpose is set forth in sec. 111.70(6), Stats.

The public policy of the state as to labor disputes arising in municipal employment is to encourage voluntary settlement through the procedures of collective bargaining. Accordingly, it is in the public interest that municipal employees so desiring be given an opportunity to bargain collectively with the municipal employer through a labor organization or other representative of the employes' own choice. *If such procedures fail, the parties should have available to them a fair, speedy, effective*

■■■■■■■■■■

*and, above all, peaceful procedure for settlement as provided in this subchapter.* [Emphasis supplied.]

The purpose is clearly ascertainable from the statute.

### *Standards*

■

The statute also provides specific standards in sec. 111.70(4)(cm)7 to guide the arbitrators. Substantially similar standards in secs. 111.57(3) and 111.58, Stats., governing arbitration disputes between public utilities and their employees, were upheld against an attack of unconstitutional delegation in *United Gas, Coke & Chemical Workers, Local 18 v. WERB,* 255 Wis. 154, 38 N.W. 2d 692 (1949). We conclude that the criteria set forth in sec. 111.70(4)(cm)7 are sufficient standards to limit the exercise of arbitrator's power.

### *Procedural Safeguards*

■

Section 111.70(4)(cm)6 prescribes specific procedural safeguards.[3] The WERC becomes directly involved upon

---

[3] Section 111.70(4)(cm)6, provides, in part:

(1) A petition must be filed with the WERC to initiate mediation-arbitration. Section 111.70(4)(cm)6a, Stats.

(2) The WERC must make an investigation and must determine that an impasse exists. Section 111.70(4)(cm)6a, Stats.

(3) Prior to the close of WERC investigations, the parties must submit a written stipulation on all issues agreed upon and final offers on all issues in dispute. Only mandatory subjects of bargaining may be included unless the other party does not object. Section 111.70(4)(cm)6a, Stats.

(4) The parties select a mediator-arbitrator by alternatively striking names from a list provided by the WERC and the WERC appoints the mediator-arbitrator. Section 111.70(4)(cm)6a, Stats.

(5) The mediator-arbitrator must endeavor to mediate the dispute and encourage a settlement by the parties. Also, at the

a petition for mediation-arbitration. It initially investigates and determines whether an actual impasse exists between the parties. The parties also select an impartial arbitrator in a process similar to drawing a jury, by alternatively striking names from a list provided by the WERC. Initially, the arbitrator must mediate and encourage settlement. Procedures are provided for public hearings and public input. Before proceeding to arbitration the arbitrator must give written notice of intent to resolve the dispute, at which time the parties are entitled to withdraw their final offer. Prior to issuing a decision, either party may request an open meeting where arguments are made in support of the final offers. Finally, the arbitrator is prohibited from making a separate and unsupported decision. Only one of the final offers from the parties may be adopted, in writing, without modification. Consequently, the Act affords each side extensive procedural safeguards to ensure that the legislative purpose is fulfilled.

request of five or more citizens, the mediator-arbitrator must hold a public hearing to allow the parties to explain their positions and to provide for public input. Section 111.70 (4) (cm) 6b, Stats.

(6) The mediator-arbitrator may proceed to arbitration only if the parties have failed to reach a voluntary settlement after a reasonable period for mediation. The mediator-arbitrator must give written notice of his or her intent to resolve the dispute by final and binding arbitration. Either party then may withdraw its final offer upon giving written notice. Section 111.70 (4) (cm) 6c, Stats.

(7) Before issuing any arbitration decision, the mediator-arbitrator must, at the request of either party, conduct an open meeting to permit the parties to explain and argue in support of their final offers. Section 111.70 (4) (cm) 6d, Stats.

(8) The mediator-arbitrator must adopt without modification the final offer of one of the parties on all dispute issues. Thus, the terms of the decision are written not by the mediator-arbitrator, but rather, by one of the parties. Section 111.70 (4) (cm) 6d, Stats.

*Judicial Safeguards*

At oral argument, Milwaukee County conceded the legislative purpose is ascertainable, there are sufficient standards to guide the arbitrators, and there are sufficient procedural safeguards. Milwaukee County, however, argues that because no provision is made for judicial review, the arbitration statute must fail the third test for determining a constitutional delegation of authority. We do not agree. Judicial review of arbitration awards has traditionally been very limited. *Milwaukee Professional Firefighters Local 215 v. City of Milwaukee,* 78 Wis. 2d 1, 21–22, 253 N.W.2d 481, 491 (1977). This limitation is necessary to preserve the important principle of finality in labor arbitration. In addition, although the legislature foreclosed judicial review under ch. 788, it did not absolutely forbid such review.

The statutory scheme makes it a prohibited practice for a municipal employer or employee to refuse or otherwise fail to implement an arbitration decision lawfully made. *See* secs. 111.70 (3) (a) 7 and 111.70 (3) (b) 6, Stats.[4] It also authorizes the WERC to adopt rules for the conduct of proceedings to enforce arbitration decisions. Section 111.70 (4) (cm) 8, Stats.

The WERC, under its rule-making authority, has adopted procedures for the prevailing party to file a prohibited practice complaint and thereby obtain enforcement of the arbitrator's award. Wis. Admin. Code, §§ ERB 31.18 and 31.19 (1978).[5] When presented with

---

[4] These sections were extended to July 1, 1987, under ch. 20, 1981 Wis. Laws, § 1841m.

[5] Wis. Admin. Code, § ERB 31.18 (1978), provides:

Enforcement of Award. (1) Procedure. If either party refuses or otherwise fails to implement an interest arbitration award lawfully made by failing to incorporate it into a written collective bargaining agreement, the other party may file a complaint of prohibited practices as provided in chapter ERB 12, Wis. Adm.

a prohibited practice complaint, the WERC determines whether the award was lawfully made. Thus, a party

Code. Such proceeding shall be deemed to be a class 2 proceeding within the meaning of s. 227.01(2)(b), Stats., and shall be governed by the provisions of s. 111.07 and s. 111.70(4)(a), Stats. In determining whether an interest arbitration award was lawfully made, the commission shall find that said award was not lawfully made under the following circumstances:

(a) Where the interest arbitration award was procured by corruption, fraud or undue means;

(b) Where there was evident partiality on the part of the neutral mediator-arbitrator(s) or corruption on the part of any of the mediator-arbitrator(s);

(c) Where the mediator-arbitrator was guilty of misconduct in refusing to conduct an arbitration meeting upon request or refusing to postpone the meeting upon sufficient cause shown, or in refusing to hear supporting arguments or evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced;

(d) Where the mediator-arbitrator exceeded his or her powers, or so imperfectly executed them that a mutual, final and definite interest arbitration award was not made.

(2) Civil Liability. Any party refusing to include an arbitration award or decision under s. 111.70(4)(cm), Stats., in a written collective bargaining agreement or failing to implement the award or decision, unless good cause is shown, shall be liable for attorney fees, interest on delayed monetary benefits, and other costs incurred in any action by the nonoffending party to enforce the award or decision.

Wis. Admin. Code, § ERB 31.19 (1978), provides:

Modification of Award. If, in a proceeding for enforcement, it appears that an interest arbitration award is lawfully made, but that the award requires modification or correcting, the commission shall issue an order modifying or correcting same. An interest arbitration award may be modified or corrected where:

(1) A court enters an order, which is not subject to further appeal, reversing a commission ruling that a particular proposal contained in said award is a mandatory subject of bargaining;

(2) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in said award;

obtains an initial review by the WERC. When the WERC determines that the arbitration decision was lawfully made, it enters an order enforcing the award. Should the party decide not to comply with the WERC's order, the WERC may petition the circuit court for enforcement. *See* secs. 111.70 (4) (a) and 111.07 (7), Stats. Judicial review is available at this stage.

The model for this statutory procedure is found in the National Labor Relations Act, 29 U.S.C.A. §§ 160 (e) and (f) (West 1973). Both procedures permit a party to test the legality of the arbitration decision by refusing to recognize or implement the agency's determination. In each case, agency review will automatically occur, followed by the possibility of judicial review.

In addition, the legislature, under sec. 227.06, Stats., permits either party to petition the WERC for a declaratory ruling on the legality of the arbitration award. The parties are afforded a full opportunity for a hearing. The WERC's declaratory ruling is then subject to judicial review by the circuit court. Section 227.06 (1), Stats.

By requiring initial WERC review of the arbitration award, the legislature has provided for some measure of uniformity. Under ch. 788, judicial review of arbitration awards would be sought in the county in which the award was made without benefit of the WERC's review. The legislature obviously preferred initial WERC review to assure some measure of expertise and to permit the court to benefit from this expertise. This process also comports with the tradition of limited court review in order to assure that arbitration proceedings remain rel-

(3) Where the mediator-arbitrator has awarded upon a matter not submitted, unless it is a matter not affecting the merits of the award upon the matters submitted;

(4) Where the award is imperfect in a matter of form not affecting the merits of the controversy.

atively inexpensive and speedy, and to assure a degree of finality.

Thus, the legislature has provided not one, but two methods of judicial review. Additionally, the legislature has insured that legally inadequate arbitration awards can be set aside by directing the reviewing court to apply the statutory standards *de novo*. Section 111.07 (7), Stats. We conclude there are adequate judicial safeguards.

POLITICAL ACCOUNTABILITY

Milwaukee County urges that we adopt a fourth test when reviewing the constitutionality of a legislative delegation of authority; namely, the person or group to whom the authority is delegated must be directly answerable to the electorate. Milwaukee County contends that the statute is invalid because it delegates authority to appointed private arbitrators who are not accountable to the electorate. It asserts that Milwaukee County officials, as elected representatives, must set the terms and conditions of employment for county employees because they can be held directly accountable to the public for their decisions.

It is not the role of this court to review the wisdom of legislative judgments. We review only the question of whether that body exceeds its constitutional authority. In this case, the legislature struggled with the difficult problem of arriving at a fair dispute resolution system for both the public employer and the public employees. It determined that the unilateral determination of employment matters by the employer gave little weight to the rights of employees. It also determined that the right to strike, a traditional employee right, posed too great a threat to the smooth operation of essential public services. It was in this context that the legislature

devised a system for binding arbitration through an impartial arbitrator.

The underlying premise of public employer-employee arbitration is that communities will forego the consequences of embittered economic warfare if there is a process to resolve disputes under fair and neutral principles. Consequently, the legislature must be allowed some flexibility in formulating a procedure to resolve the conflict between direct electoral accountability and the independence afforded through insulation from the political process.

The Minnesota Supreme Court, when confronted with a similar argument, concluded that:

[A]ccountability to the public is like delegation of power; both are a matter of degrees. Although the arbitrators are not directly accountable to the public for their decisions, various provisions ensure the competence and accountability of the arbitrators.

. . . .

There is also a pragmatic reason for the legislature's removal of the arbitrators from the immediate pressures of public opinion. The arbitrators' position is inherently one of trust; the parties must feel confident that the panel will listen to their positions, weigh the evidence, consider the panel's statutory obligations, and come to a reasonable decision. The legislature may well have believed that exposing the arbitrators to more direct public input would influence the panels and undermine the effort to prevent work stoppages.

*City of Richfield v. Local No. 1215, International Ass'n of Fire Fighters,* 276 N.W.2d 42, 47 (Minn. 1979).

The test must not be how one classifies arbitrators, but whether there are guarantees against an excessive or unrestrained exercise of their power. We conclude that the authority delegated a private arbitrator does not fail because it is conferred on a "private person," if proper

safeguards are provided. In this case, the selected arbitrator must be impartial and must follow procedures based on statutory standards before reaching a decision. Our concern on constitutional review is whether the statutory scheme provides protection against arbitrariness in the exercise of delegated authority. Milwaukee County's objections to the arbitration statute relate more to the wisdom of the legislature in adopting this procedure to settle public employer-employee disputes than to its constitutionality. To void the statute on the basis advocated by Milwaukee County would require us to improperly exercise a legislative policy decision. That is not our function on appellate review.

A delegation of authority designed to achieve a proper balance between direct political accountability and independence from the political process does not violate constitutional principles. Because MERA's legislative purpose is ascertainable, because the statute provides sufficient standards to guide the arbitrators, and because adequate procedural and judicial safeguards exist, we conclude that the statute satisfies the necessary constitutional requirements.

## STATUTORY CONFLICT

The amicus curiae have advanced the additional argument that article IV, section 22, of the Wisconsin Constitution requires local, legislative and administrative powers to be conferred upon the county board. The amici contend the legislature did that in sec. 59.15(2)(c), Stats., which provides:

The [county] board may provide, fix or change the salary or compensation of any . . . employe . . . and also establish the number of employes in any department or office . . . and may establish regulations of employment for any person paid from the county treasury . . . .

Because no exceptions are made relating to the arbitrator's decisions under sec. 111.70(4)(cm), Milwaukee County argues any conflict must be resolved in favor of county board authority. Section 59.15(4) states that in the event of any conflict between sec. 59.15 and any other statute, sec. 59.15 prevails.

A similar argument was raised and rejected in *Glendale Professional Policemen's Ass'n v. City of Glendale*, 83 Wis. 2d 90, 264 N.W.2d 594 (1978). The court stated that "sec. 111.70 . . . should be harmonized with other statutes whenever possible and that the provisions of sec. 111.70 can modify preexisting statutes. Specific contract provisions authorized by MERA must also be harmonized with the preexisting statutory scheme." *Id.* at 103–04, 264 N.W.2d at 601. This is particularly difficult because sec. 111.70 does not contain a legislative resolution of statutory conflicts.

In Wisconsin, counties, as quasi-municipal corporations, have no inherent power to govern. The municipalities are created almost exclusively in view of the state's policy at large for purposes of political organization and civil administration in matters of state concern. *Columbia County v. Board of Trustees*, 17 Wis. 2d 310, 317, 116 N.W.2d 142, 146 (1961). Here, we conclude that ch. 59, which delegates powers to county boards, does not conflict with the arbitration statute. The legislative powers of the county are exercised subject to the results of an arbitration award. Although sec. 59.15(2)(c), Stats., provides that the county may fix or change the compensation of its employees, it does not expressly limit the county from entering into collective bargaining or binding arbitration agreements. In *Glendale*, the supreme court found no conflict between sec. 62.13(4)(a), Stats., vesting authority to a police chief to select subordinates, and the municipality's duty to bargain for promotions

within the police department under sec. 111.70, Stats.

Milwaukee County's authority to fix or change the compensation of its employees is not impaired when it is required to participate in binding arbitration. The municipalities' authority was recognized by the legislature when it enacted MERA. Section 111.70 (1) (d) states, in part:

In creating this subchapter the legislature recognizes that the public employer must exercise its powers and responsibilities to act for the government and good order of the municipality, its commercial benefit and the health, safety and welfare of the public to assure orderly operations and functions within its jurisdiction, subject to those rights secured to public employes by the constitutions of this state and of the United States and by this subchapter.

This same recognition is stated in the declaration of policy, which provides that it is in the public interest to allow municipal employees to bargain collectively and, if such procedures fail, to have a peaceful settlement procedure.

Even if we were to conclude there is such a conflict, we adopt the rationale in *Glendale* that the provisions of sec. 111.70 can modify preexisting statutes. This conclusion is based on the fact that sec. 111.70 was enacted (and recently reenacted under ch. 20, 1981 Wis. Laws, extending the statute to July 1, 1987) after ch. 59. The legislature is presumed to have acted with full knowledge of the preexisting statutes.

## EQUAL PROTECTION AND DUE PROCESS

Another argument raised in the amicus curiae briefs is that MERA is unconstitutional because it violates the United States equal protection and due process clauses and article I, section 1, of the Wisconsin Constitution.[6]

---

[6] Article I, § 1, of the Wisconsin Constitution provides:

All men are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of

The amici argue that the constitutionally established right to cast an effective vote is substantially impaired when decision-making authority over significant policy matters is removed from elected officials and delegated to non-elected arbitrators. This argument essentially raises the same objections as Milwaukee County's contention that the arbitrator's decisions are legislative and therefore unconstitutional.

Similar arguments were raised and found unpersuasive in *Village of West Milwaukee v. VTAE Board,* 51 Wis. 2d 356, 187 N.W.2d 387 (1971). Our supreme court concluded that a statute providing for appointive boards to operate vocational schools and levy taxes for their operation does not violate the United States equal protection or due process clauses, and article I, section 1, of the Wisconsin Constitution.

Both the United States Supreme Court in *Sailors v. Board of Education,* 387 U.S. 105, 110 (1967), and the Wisconsin Supreme Court in *Village of West Milwaukee,* 51 Wis. 2d at 384, 187 N.W.2d at 400, state that although the appointive boards have authority to levy taxes, they perform essentially administrative, and not legislative functions. The two courts noted that the appointive bodies do not perform legislative functions merely because they levy taxes or perform other administrative duties. Consequently, both courts upheld the authority of the appointive bodies against the due process and equal protection challenges.

Similarly, we conclude that the appointed arbitrator performs an administrative, rather than a legislative

happiness; to secure these rights, governments are instituted among men, deriving their just powers from the consent of the governed.

This has been held to be substantially equivalent to the due process and equal protection clauses of the fourteenth amendment to the United States Constitution. *State ex rel. Sonneborn v. Sylvester,* 26 Wis. 2d 43, 49–50, 132 N.W.2d 249, 252 (1965).

function. The legislature has identified a public policy in resolving public employer-employee disputes and has adopted the administrative means to effectuate that policy. The arbitrator merely carries out a legislatively-outlined administrative function. Consequently, we conclude MERA does not violate the equal protection or the due process clauses of either the United States or Wisconsin Constitution. We therefore affirm the circuit court's judgment holding that Municipal Employment Relations Act is a constitutional delegation of authority.

*By the Court.*—Order affirmed.