HEIER'S TRUCKING, INC., a Wisconsin Corporation,
Plaintiff-Respondent,

v.

WAUPACA COUNTY, and Waupaca County Solid Waste
Board, Defendants-Appellants.

Court of Appeals

*No. 96–3711. Submitted on briefs June 6, 1997.—Decided July 31, 1997.*

(Also reported in 569 N.W.2d 352.)

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Jeffrey J. Siewert*, Waupaca County Corporation Counsel, and *Edward J. Williams, James R. Macy* and *Timothy J. McCoy* of *Godfrey & Kahn, S.C.*

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Jonathan A. Olson* of *Werner, Lindgren & Johnson, S.C.*

Before Eich, C.J., Vergeront and Roggensack, JJ.

VERGERONT, J. This appeal concerns a Waupaca County recycling ordinance that requires all recyclables collected in municipalities that have designated the County as the "responsible unit" to be delivered to the Waupaca County Processing Facility. WAUPACA COUNTY, WIS., RECYCLING ORDINANCE § 20.15(1) (1995). Waupaca County and Waupaca County Solid Waste Management Board appeal from a judgment declaring this "flow control" provision of the ordinance invalid and unenforceable on the grounds that it violates the Commerce Clause of the United States Constitution. We agree with the trial court and therefore affirm.

## BACKGROUND

The parties stipulated to the relevant facts. The Waupaca County Board adopted the Waupaca County Recycling Ordinance, ch. 20, for the purpose of establishing and administering an effective recycling program pursuant to §§ 287.09—287.11, Stats.[1] The ordinance is in effect and enforced only in those Waupaca County municipalities that have designated Waupaca County as the "responsible unit" pursuant to § 287.09(1)(d), which provides that a municipality may by contract designate another unit of government to be the responsible unit in lieu of the municipality. The duty of a responsible unit is to develop and implement within its region an effective recycling program that complies with the statute. Section 287.09(2).

Thirty-one of Waupaca County's municipalities signed a county municipal recycling contract. These contracts provide that the County is responsible for the transportation, processing and marketing of recyclable materials and paying all of the administrative costs related to this service. In return, the municipalities agree to enforce all the rules, regulations and ordinances required to carry out an effective recycling program.

The Waupaca County recycling ordinance's "flow control" provision provides in part that: "[r]ecyclables collected through municipally-provided or municipally-coordinated collection programs shall be delivered to the Waupaca County Processing Facility . . . as per the 1991 County/Municipal Recycling Agreement." WAUPACA COUNTY, WIS., RECYCLING ORDINANCE

---

[1] At the time the ordinance was enacted, the statute was numbered §§ 159.09–159.11, Stats., 1993–94. The statute was renumbered by 1995 Wis. Act 227 §§ 891–894.

§ 20.15(1) (1995). "A municipally-provided program or municipally-coordinated collection program" is defined in the ordinance as "a collection program for recyclables which has been implemented municipally-wide whereby the municipality provides the collection service or coordinates the collection service through contract and/or licensing. Collection service refers to either drop-off or curbside service." WAUPACA COUNTY, WIS., RECYCLING ORDINANCE § 20.10(15). The ordinance provides for enforcement by authorized officers, representatives of the Waupaca County Waste Management Board and law enforcement officers through the use of citations and forfeitures. WAUPACA COUNTY, WIS., RECYCLING ORDINANCE § 20.27.

Heier's Trucking, a Wisconsin corporation involved primarily in the collection, transportation, marketing and recycling of solid waste, collects recyclables in the City of Waupaca and the Town of Wyoming. Both municipalities signed the county-municipal recycling agreement. Heier's Trucking collects recyclables in the Town of Wyoming pursuant to a contract between Heier's Trucking and the town. In the City of Waupaca, Heier's Trucking collects recyclables pursuant to a licensing ordinance under which Heier's Trucking has a license to haul solid waste in the municipality. The Town of Wyoming's collection program is municipally-provided and the City of Waupaca's program is municipally-coordinated.

Heier's Trucking also operates its own certified processing facility at which recyclables are processed. It petitioned the County for an exemption from the required use of the county processing facility and was denied. After receiving thirty-three citations for failing to deliver recyclable materials to the county processing facility in violation of the ordinance, Heier's Trucking

filed an action for declaratory judgment challenging the validity and constitutionality of the county ordinance.[2] The trial court held that WAUPACA COUNTY, WIS., RECYCLING ORDINANCE § 20.15 and related provisions of § 20.22 of the ordinance were invalid and unenforceable because they discriminated against interstate commerce in violation of the Commerce Clause of the United States Constitution.

## DISCUSSION

Application of a constitutional provision to undisputed facts presents a question of law, which we review de novo. *State v. Pheil*, 152 Wis. 2d 523, 529, 449 N.W.2d 858, 860 (Ct. App. 1989). Although we review the issues on this appeal de novo, we benefit from the analysis of the trial court. *See Wisconsin Retired Teachers Ass'n v. Employe Trust*, 195 Wis. 2d 1001, 1024, 537 N.W.2d 400, 408 (Ct. App. 1995), *aff'd* 207 Wis. 2d 1, 558 N.W.2d 83 (1997). A legislative enactment is presumed to be constitutional and any doubts must be resolved in favor of a judicial construction that renders the enactment constitutional. *Milwaukee County v. District Council* 48, 109 Wis. 2d 14, 24, 325 N.W.2d 350, 354–55 (Ct. App. 1982). The burden of proving that an enactment is unconstitutional is on the party challenging the enactment. *Id.*

The Commerce Clause grants Congress the power to regulate commerce between the states. U.S. CONST. art. I, § 8, cl. 3. However, it is also interpreted to act as

---

[2] The complaint and amended complaint also alleged statutory violations and constitutional violations in addition to the Commerce Clause violation, but those are not the subject of this appeal.

a restriction on permissible state regulation even in the absence of a conflicting federal statute, and this restriction is referred to as the "dormant" Commerce Clause. *SSC Corp. v. Town of Smithtown,* 66 F.3d 502, 508–09 (2nd Cir. 1995). Local regulations are per se invalid under the Commerce Clause if they discriminate against interstate commerce, unless the municipality can demonstrate, under rigorous scrutiny, that it has no other means to advance a legitimate local interest. *C&A Carbone, Inc. v. Town of Clarkstown,* 511 U.S. 383, 389, 392 (1994). If a local regulation does not discriminate against interstate commerce but does burden interstate commerce, the regulation is invalid if the burden is clearly excessive in relation to the putative local benefits. *Id.*

■

Waupaca County first contends that the Commerce Clause is not applicable because the ordinance constitutes market participation, not market regulation. A governmental unit may engage in market participation, as opposed to market regulation, without activating the strictures of the dormant Commerce Clause. *SSC Corp.,* 66 F.3d at 510. A governmental unit is a market participant if it participates in the market as a buyer or seller on the same footing as private parties. *Id.* The County argues that both *SSC Corp.* and another case applying the concept of market participation, *USA Recycling, Inc. v. Town of Babylon,* 66 F.3d 1272 (2nd Cir. 1995), support the conclusion that the Commerce Clause does not apply to the ordinance.

In *SSC Corp.,* the Town of Smithtown hired a private contractor to build and run an incinerator financed through municipal bonds. *SSC Corp.,* 66 F.3d at 506–07. As part of its solid waste plan, and to protect

its financial investment, the town enacted an ordinance requiring that all residential and commercial solid waste generated in the town be disposed of at the town-financed incinerator, where Smithtown charged a "tipping fee" based on the amount of garbage dumped. *Id.* At the same time, the town entered into a contract with private waste haulers to provide collection service in its district. *Id.* The contract required the haulers to deliver all waste to the town-financed incinerator. *Id.* at 505. To meet its obligation to the private contractor, which had to repay the bonding authority, the town relied on funds from property taxes and tipping fees at the incinerator. *Id.* at 507–08.

The court in *SSC Corp.* concluded the Smithtown ordinance constituted market regulation because it provided penalties for those companies that hauled the waste of town residents to incinerators other than the town-financed incinerator. *Id.* at 512. This was not a power that any private seller could use to induce individuals to purchase its services. *Id.* at 514.

On the other hand, the court concluded that the contract with the waste haulers constituted market participation because Smithtown was exercising a power that any private party in the same position could have exercised. *Id.* at 515. In addition to being a seller of waste disposal services, Smithtown was a purchaser of waste collection and disposal services because it was spending tax dollars to pay for these services: it had simply decided to contract out rather than provide these services itself. *Id.* As a purchaser of waste collection and waste disposal services, Smithtown could decide with whom it wanted to deal, and could require the haulers it contracted with to use the town-financed incinerator. In the court's analysis, it made no difference whether the incinerator services the town

required the haulers to use were provided by a private entity or by a public entity. *Id.*

We conclude that Waupaca County's ordinance constitutes market regulation, not participation. Like the ordinance in *SSC Corp.*, Waupaca's ordinance imposes penalties on waste haulers who fail to comply with the requirement in WAUPACA COUNTY, WIS., RECYCLING ORDINANCE § 20.15(1) that the waste be delivered to the County Processing Facility. This is not a power that a private party selling processing services could use to require persons to do business with it.

The County appears to ignore the portion of *SSC Corp.* that held that the Smithtown ordinance was market regulation and instead focuses on the analysis of the contracts with the haulers, which, the *SSC Corp.* court concluded, were market participation. The County argues that its contracts with the municipalities constitute market participation because they "essentially designate the County as the municipalities' agent and purchase effective recycling programs in compliance with the state law for the municipalities." According to the County, its ordinance, like the *SSC Corp.* contracts, constitute market participation because "the contracts with the municipalities required the county to enact such an ordinance."

We do not follow the County's reasoning on this point. Whether or not the contracts with the municipalities require an ordinance imposing penalties on haulers who do not use the county processing facility,[3] the ordinance is in either case a use of the County's regulatory power to induce haulers to use the County's

---

[3] The County does not refer us to the section in the county-municipality contract that requires the County to enact such an ordinance and we are unable to locate it.

601

facility. Since the ordinance represents market regulation by the County, it does not become market participation simply because a contract between the County and municipalities requires such an ordinance. *SSC Corp.* does not suggest such an analysis and the facts in *SSC Corp.* are at odds with such an analysis. The contract with the haulers in *SSC Corp.,* which required that they dispose of waste at the town-financed incinerator, functioned independently from the ordinance. *SSC Corp.* challenged both the ordinance and the contract as violations of the dormant Commerce Clause, *SSC Corp.*, 66 F.3d at 508, and the court analyzed the ordinance and the contract separately to determine whether each was market regulation or market participation. In contrast, Waupaca County does not have a contract with Heier's Trucking or any other hauler: either the municipalities or individual residents have a contract with Heier's. Heier's Trucking is not challenging those contracts under the dormant Commerce Clause but only the ordinance.

Neither does *USA Recycling* support the County's argument that it is acting as a market participant. The Town of Babylon established a commercial garbage collection district, accepted bids, and entered into a service agreement with one company to provide commercial garbage collection services to the entire district under an exclusive license. *USA Recycling*, 66 F.3d at 1278–79. The agreement with that hauler provided that the hauler could dispose up to a specified tonnage of commercial garbage at the town incinerator for no charge and had to pay the prevailing tipping fee above that amount. The hauler could dispose of the garbage elsewhere but had to pay for those disposal costs itself. *Id.* at 1279. The court held that the town's decision to

replace the private market with uniform municipal collection was market regulation and therefore subject to the dormant Commerce Clause, because the town was exercising its governmental powers in denying licenses to all but the exclusive licensee and assessing penalties against haulers operating without a license. *Id.* at 1282. However, the town's decision to let the exclusive licensee dump garbage at the town incinerator for free was market participation because the town effectively owned the incinerator, had the exclusive rights to dispose of waste there, and could sell those rights or give them away as it chose—just as any private party could in that situation. *Id.* at 1289.

*USA Recycling*, like *SSC Corp.*, instructs that Waupaca County's ordinance is market regulation. In the challenged portion of the ordinance, Waupaca County is not, by contract, selling or giving away its exclusive right to use its processing facility but is penalizing entities for not using its facility, much as Babylon penalized all haulers except the one it chose to contract with.

Since the ordinance is market regulation, we next consider the County's arguments that the ordinance has no impact on interstate commerce and that, even if it does, it does not discriminate against interstate commerce. Like the court in *SSC Corp.*, we conclude that the Supreme Court's decision in *C&A Carbone Inc. v. Town of Clarkstown*, compels the conclusion that the ordinance violates the dormant Commerce Clause. *See SSC Corp.*, 66 F.3d at 514.

In *Carbone,* the flow control ordinance enacted by Clarkstown required that non-recyclable waste within the town be deposited at the transfer station, where non-recyclable waste was separated from recyclable waste. A private company had the transfer station

603

built under contract with the town. The contract provided that the company would build and operate the transfer station for five years if the town would provide the station with at least 120,000 tons of solid waste each year for which the contractor could charge a tipping fee of $81 per ton. *Carbone*, 511 U.S. at 387. Carbone, a private corporation, owned and operated its own transfer station in Clarkstown. *Id.* at 388. While the ordinance permitted recyclers like Carbone to continue receiving solid waste, it required them to bring the residue from that waste to the town's transfer station. Carbone was thus prohibited from shipping the non-recyclable waste itself and had to pay the tipping fee, even though Carbone had already sorted the waste. *Id.*

The Court first held that the ordinance did regulate interstate commerce:

> While the immediate effect of the ordinance is to direct local transport of solid waste to a designated place within the local jurisdiction, its economic effects are interstate in reach. The Carbone facility in Clarkstown receives and processes waste from places other than Clarkstown, including from out of state. By requiring Carbone to send the nonrecyclable portion of this waste to the [town] transfer station at an additional cost, the flow control ordinance drives up the cost for out-of-state interests to dispose of their waste. Furthermore, even as to waste originant in Clarkstown, the ordinance prevents everyone except the favored local operator from performing the initial processing step. The ordinance thus deprives out-of-state businesses of access to a local market. These economic effects are more than enough to bring the Clarkstown ordinance within the purview of the commerce clause.

*Id.* at 389.

The Court next concluded that the ordinance did discriminate against interstate commerce because it allowed only the favored operator to process waste within the town limits. *Id.* at 391. The ordinance was no less discriminatory, the Court stated, because it prohibited both in-state and out-of-state competitors from processing waste. *Id.* Indeed, the fact that it favored a single proprietor "just makes the protectionist effect of the ordinance more acute." *Id.* at 392.

Finally, the Court concluded that the town had not demonstrated it had no other means but the ordinance to advance a legitimate local interest. *Id.* at 393. There were nondiscriminatory means available for addressing the health and environmental problems posed by the disposal of solid waste, such as uniform safety regulations. *Id.* And the need to generate revenue was, in itself, not a local interest that could justify discrimination against interstate commerce. *Id.* at 394. The town could subsidize the facility to insure its long term survival through general taxes or municipal bonds. *Id.*

Waupaca County argues that, unlike the ordinance in *Carbone*, its ordinance does not impact on interstate commerce. Waupaca County points to the absence of any facts in the record showing that Heier's transports waste interstate, whereas Carbone did transport waste from its transition facility out of state.[4] We agree that this is a factual difference, but we do not read the Court's conclusion that the Clarkstown

---

[4] We note that Heier's Trucking argued in its brief before the trial court that it sells the recyclable components, after processing, to both Wisconsin and non-Wisconsin companies for further processing. However, because this is not included in the stipulated facts, we do not consider it for purposes of this appeal.

ordinance affected interstate commerce to rest solely on whether Carbone received or delivered waste interstate. That was one basis but there was a second independent basis: the exclusion of all but the favored operator from providing transition services, thereby depriving out-of-state businesses from access to that market. *Id.* at 389. The Court's analysis of whether the Clarkstown ordinance discriminated against interstate commerce focused on this characteristic of the ordinance, and the Court decided that this characteristic of the ordinance did discriminate against interstate commerce. *Id.* We therefore conclude that Carbone's interstate receipt or transport of waste is not essential to the Court's invalidation of the Clarkstown ordinance. Our conclusion is supported by the *SSC Corp.* court's application of *Carbone* to invalidate the Smithtown ordinance on the ground that it directed all town waste "to a single local disposal facility, to the exclusion of both in-state and out-of state competitors." *SSC Corp.* at 514. It is nowhere mentioned in *SSC Corp.* that the hauler challenging that restriction transported interstate.

Similar to the ordinance in *Carbone*, Waupaca County's ordinance allows only one processor to process the waste for the municipalities that have designated the County as the responsible unit, thereby precluding all other in-state and all out-of-state businesses from performing this service. The County argues that, unlike in *Carbone*, the municipalities can choose whether to designate the County as the "responsible unit," and if they decide not to, they may use any processing service they choose, including "importing" the service from out of state. It is true that the degree of impact on interstate commerce may vary depending on how many municipalites choose to designate the

County as the responsible unit. But we do not see how that affects the analysis of the ordinance's validity for those municipalities that do choose the County. As to those municipalities, the County is using its regulatory powers to prohibit out-of-state competitors, as well as in-state competitors, from processing waste generated from those municipalities.

The County also points out the impracticality of "import[ing] the processing service," in the words of the Court in *Carbone, see Carbone,* 511 U.S. at 392—that is, the impracticality of having an out-of-state business provide the processing service in Waupaca County. The same could be said for "importing the processing service" in Clarkstown but the Court invalidated that ordinance nonetheless.

Waupaca County does not argue that, if the flow control provision of its ordinance does discriminate against interstate commerce, it can show that it has no other means to advance a legitimate local interest. We observe, as did the Court in *Carbone* and the Second Circuit in *SSC Corp.,* that Waupaca County has available nondiscriminatory measures to address the health and safety issues posed by waste disposal and to insure the financial viability of its processing facility.

The overriding theme of the County's position is that *Carbone* has had a negative impact on beneficial recycling programs, causing other courts to limit its impact, and this court should do likewise. However, the cases the County cites as examples of limits on Carbone do not support the validity of its ordinance. The market participation/market regulation distinction was not adopted by the courts in *SSC Corp.* and *USA Recycling* in order to limit *Carbone*, as the County suggests. Rather, that distinction pre-dated *Carbone. See SSC Corp.*, 66 F.3d at 510 (Supreme Court introduced mar-

ket participation doctrine in *Hughes v. Alexandria Scrap Corp.*, 426 U.S. 794 (1976)). That distinction was not an issue in *Carbone* because it was clear the Clarkstown ordinance was market regulation.

In the other cases the County cites, the challenged regulations either provide haulers with the option of taking waste to an out-of-state facility, *see, e.g., Vince Refuse Service, Inc. v. Clark County Solid Waste Management District*, 1995 WL 243121 (S.D. Ohio), and *Grand Central Sanitation, Inc. v. City of Bethlehem*, 1994 WL 613674 (E.D. Pa.); or the court recognizes that the designation of a single local facility does not discriminate against interstate commerce if the bidding process to select that facility is open, fair, and does not favor in-state bidders. *See, e.g., Harvey & Harvey, Inc. v. County of Chester*, 68 F.3d 788, 801–03 (3rd Cir. 1995). Beyond citing these cases as examples of the limitations on the reach of *Carbone*, the County does not explain how they apply to its ordinance, and we perceive no application. The commentators cited by the County may have a valid point on *Carbone*'s negative impact on beneficial recycling regulations, but we must follow *Carbone*.

In summary, we conclude that the Commerce Clause is applicable because Waupaca County's flow control ordinance is market regulation. WAUPACA COUNTY, WIS., RECYCLING ORDINANCE § 20.15(1) and related provisions of WAUPACA COUNTY, WIS., RECYCLING ORDINANCE § 20.22 violate the Commerce Clause because they impermissibly discriminate against interstate commerce.

*By the Court.*—Judgment affirmed.