Jerome JONES, and All Others Similarly Situated, Plaintiff–Appellant,

v.

CITY OF GARY, INDIANA, Defendant–Appellee.

No. 94–2673.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 8, 1994.

Decided June 22, 1995.

---

Frank R. Martinez, III (argued), Schererville, IN, for plaintiff-appellant.

Hamilton L. Carmouche, Rebecca Wyatt (argued), and Cynthia I. Taylor, City of Gary Law Dept., Gary, IN, for defendant-appellee.

Before COFFEY and RIPPLE, Circuit Judges, and SKINNER,* District Judge.

COFFEY, Circuit Judge.

Jerome Jones filed a class action complaint in district court alleging that Fire Chief Benjamin Perry, acting on behalf of the City of Gary, Indiana, was summarily suspending firefighters without pay and without pre-suspension hearings, thus depriving them of their protected property interests in their employment without due process of law in violation of the Fourteenth Amendment and 42 U.S.C. § 1983.[1] Both parties filed cross motions for summary judgment. The district court granted the City's motion and denied Jones's motion, finding that Jones's post-suspension hearing had afforded him due process of law. We affirm.

## I. BACKGROUND

Jones became a member of the City of Gary, Indiana Fire Department in July, 1982, at the age of twenty-seven. Four years later, in 1986, he developed what Dr. Clifford Eguw, Jones's physician, diagnosed as an arthritic condition in his left knee, right foot, and right elbow. Jones claimed that his arthritis impaired his ability to perform all the requirements of his job and that he fell off a ladder while on duty, the fall being caused by the pain from his arthritis. Jones stated that climbing ladders and lifting heavy objects,[2] aggravated his condition. He reported that changes in climate frequently caused flare-ups of his arthritic condition and that they usually continued for a period of three to four days.[3] In April, 1988, Jones took time off from work because of his arthritis and sought evaluation and medical treatment, when indicated, from a number of doctors including Dr. William Lewis, his physician, as well as Dr. Larry Brazley, an arthritic specialist, who allegedly submitted reports to Chief Perry about Jones's condition. The record does not reflect that Jones was on any medication for his arthritic condition. On July 12, 1988, Chief Perry sent Jones a letter stating "you have exhausted your sick leave for the year of 1988.[4] As of July 12, 1988, I am requesting you to be placed on pension immediately."

Jones requested a disability pension[5] because of his arthritic knee and the Local Pension Hearing Board held a hearing on the

---

* The Honorable Walter Jay Skinner, United States District Judge for the District of Massachusetts, is sitting by designation.

1. The district court held that Jones was not entitled to maintain the suit as a class action because he failed to satisfy Fed.R.Civ.P. 23(a) which requires the plaintiff to establish that the members of the class are so numerous that it is impractical to join individual plaintiffs together. The court found that potential plaintiffs could be easily joined in this action and Jones has not appealed this decision.

2. The record is silent as to what heavy objects Jones was referring to when he stated that they aggravated his arthritic condition, and we can only speculate that he was referring to human beings, ladders, water hoses and other equipment.

3. Jones requested Chief Perry to assign him to a light duty job but the Chief informed him that there were no such positions available.

4. Firefighters are allotted ninety days sick leave each year. During that time, the firefighter is required to submit a weekly doctor's report to the Chief's office if the sick leave is continuous. Once the physician documented illness exceeds ninety days, the firefighter must appear before the Local Pension Board for a determination of the severity of his disability and whether or not he or she can return to work.

5. There is no indication in the record that Jones applied for a duty disability pension which would have connoted that he had incurred the injury in the line of duty. Rather, his claimed disability is aggravated by the tasks he was required to perform on the job, but not caused by the job.

matter on September 15, 1988.[6] After reviewing both the records and letters submitted by Jones and the Board physician, the Board denied Jones's application for a disability pension stating that "[t]he Local Board determines that claimant Jerome Jones is not permanently or temporarily unable to perform all suitable and available work for which he is or may be capable of becoming qualified." Jones appealed the Board's decision to the City of Gary Public Employees' Retirement Fund Board ("PERF") which, on February 21, 1989, upheld the Local Pension Board's decision relying on Dr. Bill's finding that Jones was "not impaired within the meaning of impairment as used in the Police and Fire Pension Fund." The PERF Board concluded that Jones was not disabled and made no specific finding other than that.

In light of the PERF Board's decision, on February 24, 1989, Chief Perry sent Jones a letter ordering him to return to duty and informing him that if he failed to report to work forthwith, he would be removed from the payroll. Chief Perry also advised Jones that charges would be filed with the Gary Fire Civil Service Commission (GFCSC) seeking his dismissal from the Department if he failed to immediately return to work. The letter also informed Jones that after he returned to work, he would have fifteen days to appeal the PERF Board decision affirming the denial of a disability pension.[7] Jones filed a timely appeal but he canceled and rescheduled his disability pension hearing before the PERF Board on five different occasions.[8]

On March 6, 1989, while Jones's appeal of the PERF Board's decision was pending[9] with the ALJ, Chief Perry sent Jones a letter notifying him that because he failed to report for work on February 28, he would be suspended for thirty days without pay.[10] Jones

---

**6.** Jones submitted reports from Dr. Brazley, Dr. Walter E. McDonald and Dr. M. Carter, as well as reports from the Methodist Hospital Pathology Department, The Methodist Hospital Emergency Department, and a report of a left knee arthrogram report from Dr. S.L. Patel. The Local Board ordered Jones to submit to an examination by Dr. R.J. Bills, an independent examiner employed by the Local Board who was to perform an evaluation of Jones's arthritic condition. The record does not reflect what Dr. Bills's specialty is, nor does it contain the reports of any of these doctors or hospitals. We can only assume that neither Jones nor the City of Gary submitted them to the court.

**7.** An appeal of PERF Board decisions is heard by a State of Indiana ALJ.

**8.** No explanation for these cancellations can be found in the record. In a letter dated July 12, 1989, sent by Thomas Featheringill of the PERF Board to the Gary Fire Commissioners, Featheringill stated that the PERF Board attempted to set up hearings to address Jones's disability claim on April 12, April 19, April 26, May 25, and June 15, 1989. Jones asked the PERF Board to reschedule each of the hearings until he finally requested that his hearing be held on or after July 25, 1989. Featheringill stated that "[t]he primary purpose of this letter is to illustrate that PERF has attempted several times to bring this situation to a conclusion. The delay in doing so has consistently been associated with Mr. Jones."

**9.** Jones is not appealing any of the decisions of the Local Pension Board, the PERF Board or the ALJ regarding his disability pension. The information surrounding those proceedings is included in this factual recitation because once Chief Perry learned that Jones was not disabled, such that he was entitled to receive a pension, he proceeded to suspend him and request Jones's termination based on his failure to report for duty. Thus, the facts surrounding both disability pension and the suspension proceedings are the same, but the two proceedings are separate and distinct.

**10.** The suspension was based upon violation of the following rules, regulations and statutes:

(1) Gary Fire Department Rule 16 which states that "any man not present at assigned station at 7:00 a.m. or takes leave of absence without permission is considered (AWOL) absent without leave;"

(2) Gary City Ordinance 5882 § 6 which provides for removal, discharge, suspension or demotion under the following circumstances:

... (2) Willful failure to carry out the direct lawful orders of a superior officer. (3) Failure to report for duty at the time scheduled without giving notice of inability to report; provided, however, that such failure to report is not caused by sudden illness, accident or other circumstance beyond his control that would prevent him from giving such notice.... (7) Willful and repeated violations of the Rules and Regulations adopted by the Commission; Provided, however, that repeated violations shall be the conviction of more than two (2) violations in any one (1) year;

(3) Burns Indiana Statutes § 48–6210:
Removal
   1. Neglect of duty

was not afforded a pre-suspension hearing by the GFCSC but was advised that he had ten days to appeal his suspension to the GFCSC.

By letter dated April 12, 1989, the Fire Chief informed the GFCSC that Jones was suspended without pay for thirty days as of February 28, 1989, and requested that the GFCSC terminate his employment because of his continued absence from duty without permission. On April 12 and April 13, Chief Perry sent letters to Jones confirming his thirty day suspension [11] and notifying Jones that because of his continual failure to report for duty, he was instituting proceedings seeking his dismissal from the fire department.

Jones continued to remain on off duty status until June 6, 1989 when Chief Perry sent Jones another letter, advising him that his failure to report for duty dictated his placement on absent without leave (AWOL) status in violation of the City of Gary Fire Department Rules and Regulations. On June 8, 1989, the GFCSC heard Jones's appeal of his February, 1989 suspension without pay. The GFCSC affirmed Jones's suspension, but delayed the determination of his employment status pending the outcome of his disability pension appeal with the ALJ. The GFCSC refused to address whether or not Jones was entitled to a disability pension because that responsibility belonged to the ALJ and the PERF Board. After its review, the GFCSC reinstated Jones to duty status as of March 29, 1989, and ordered back pay retroactive to that date.[12]

Meanwhile, Jones's appeal of the denial of his disability pension, a proceeding distinct from the one he is appealing, went forward. On August 17, 1989, an ALJ heard Jones's appeal of the PERF Board's denial of his disability pension. Jones submitted reports from Drs. Lewis and Brazley, as well as reports from Drs. Chermel and Slezas.[13] The City submitted the decision of the Local Pension Board in addition to letters Dr. Arthur Paul Kebel submitted to the PERF Board which had letters from Dr. H.O. Doumanian and Dr. Robert S. Martino attached to them.[14] The ALJ, after reviewing the evidence and records presented to the Local Pension Board, as well as the PERF Board, upheld the PERF Board's decision because "Jones has shown no objective evidence that he is permanently or temporarily unable to perform the duties of a firefighter." [15] The ALJ recommended to the PERF Board that Jones be denied a disability pension. Jones objected to the ALJ's determination, and the PERF Board remanded the matter back to the ALJ in November 1989 for the acceptance of further medical information in support of his claim. Although Jones did present further information and submit to further medical examination and evaluation, this information was not received by the ALJ until well after the relevant proceedings for this appeal had concluded.[16]

---

2. Conduct affecting the effectiveness of the Department
3. Absence without leave; and
(4) Indiana Code § 18–1–11–3:
Firefighter Disciplinary Removal
 1. Neglect of duty
 2. Violation of rules
 3. Neglect of orders
 4. Absence without leave.

**11.** Although Gary City Ordinance § 5882(7) provides that the fire chief may suspend a firefighter pending confirmation by the GFCSC within three days, the GFCSC failed to confirm any of Jones's suspensions within the required three day time period.

**12.** The GFCSC reinstated Jones because other firefighters who were appealing denial of disability pensions were allowed to remain on the active payroll while their appeals were pending even if their absence continued without interruption during the appeals process. The GFCSC determined that Jones should be treated the same as other similarly situated firefighters. In reinstating Jones with retroactive pay, the GFCSC did not imply that it thought that Jones's suspensions were improper.

**13.** *See, supra,* note 5.

**14.** *Id.*

**15.** The ALJ made no additional findings of fact with respect to Jones's alleged disability except to state that "Jerome Jones is a firefighter for the City of Gary and is now currently on leave."

**16.** Jones's supplemental information was reviewed by a different ALJ from the first hearing, during a hearing on November 7, 1991. Based on the supplemental information, the ALJ ordered that the supplemental information be submitted to Dr. Gabriel J. Rosenberg, the coordinating doctor for the PERF Board, that Jones be examined by an E.N.T. specialist, and that he be

Between April, 1989 and March, 1990, Chief Perry sent the GFCSC eight letters, all recommending the termination of Jones's employment for failure to report to duty, and requesting that the GFCSC hold a hearing regarding Jones's employment status. While Chief Perry was urging the GFCSC to review Jones's employment status, he notified Jones by letter on August 28, 1989, that he was ordered to return to active duty by September 1, 1989.[17] Jones failed to report to work on the given date and Chief Perry suspended him for thirty days without pay. In each successive month, Chief Perry notified Jones by letter ordering him to return to firefighting duty on the first day of the month. When Jones failed to report to duty each month, Chief Perry continued this monthly suspension process of Jones without pay from October, 1989, through March, 1990. Even though Chief Perry took care to notify Jones of these successive suspensions by letter, Jones was afforded no hearing prior to the suspensions, nor did he request one.[18]

On March 28, 1990, the GFCSC held a hearing concerning Jones's suspensions during the period of September through March, and ruled that all of the suspensions were "made by Chief Perry in good faith and for cause." Additionally, the GFCSC directed that Jones's employment with the Gary Fire Department be terminated effective April 18, 1990. He appealed his termination to the Lake County Circuit Court which in turn affirmed the GFCSC's decision, holding that "[a]ll the requirements of due process were fulfilled; [t]he administrative findings are supported by substantial evidence; and [t]he order of the Commission terminating Plaintiff's employment was made in good faith and for cause."

Having lost in both the administrative and state court forums, Jones turned to the federal court system and filed a class action complaint, on behalf of himself and other firefighters who he alleged were also suspended without a pre-suspension hearing. Jones's complaint alleged that Chief Perry, acting on behalf of the City of Gary, was summarily suspending firefighters without pre-suspension hearings, thus depriving them of their property interests in their continued employment without due process of law, in violation of 42 U.S.C. § 1983. The court issued an order denying Jones's motion for partial summary judgment, and granted the City's motion for summary judgment, finding

examined by a doctor specializing in internal medicine and orthopedics. Accordingly, Jones was examined by Dr. William J. Bremer, an otolaryngologist, and Dr. Michael Lockwood, a specialist in rheumatology and internal medicine. For the first time in any proceeding pertaining to Jones, it was reported that Dr. Lockwood diagnosed Jones as suffering from diabetes mellitus on May 18, 1990, a date after Jones's suspension hearing before the GFCSC was held. Therefore, while the ALJ did award Jones a disability pension, retroactive to May, 1990, based on his diabetes, the granting of the pension is irrelevant to the proceedings at hand because it was done after the suspension hearing was held, and was not based on the arthritic condition that Jones claims was his justification for not returning to work when so ordered by Chief Perry. The ALJ awarded Jones the disability pension based on Dr. Lockwood's opinion that "because of his insulin dependent diabetes mellitus, ... he should not be involved in high risk activities, such as, climbing ladders or subjecting himself to potential periods of time where he is unable to eat or take liquids." The record is silent as to when Jones began insulin therapy. Hypoglycemia is a condition in which there is an abnormally diminished concentration of glucose in the blood, which may lead to tremulousness, cold sweat, headaches, accompanied by irritability, confusion, hallucinations, bizarre behavior, and ultimately, convulsions and coma. Dorland's Illustrated Medical Dictionary 806 (28th ed. 1994).

Even though this hearing was after the GFCSC heard Jones's appeal of his suspension, the ALJ also reevaluated Jones's claim that he was disabled because of arthritis and found, once again, that Jones did not suffer from disabling arthritis. He based his determination on a medical report from Dr. Lockwood in which he reported that he found no evidence of Jones suffering from osteoarthritis in his left knee. The ALJ also received in evidence that portion of Dr. Lockwood's report noting that when he examined prior x-rays of Jones's knee, he found no evidence that Jones ever suffered from arthritis.

17. Chief Perry relied on the ALJ's August 23, 1989 decision that Jones was not disabled from his alleged arthritic condition as authority to order him back to duty.

18. Although the City claimed that Jones appealed his October, 1989 suspension, neither Jones nor the City has presented the court with any record that Jones requested a hearing before the GFCSC.

that although Jones had not been afforded pre-suspension hearings, he received prompt post-suspension review and thus had not been deprived of a protected property interest without due process of law.

## II.  DISCUSSION

We are presented with two issues on appeal: (1) whether Jones had a protected property interest in continued employment with the City of Gary Fire Department; and (2) whether his suspension without a pre-suspension hearing deprived him of that interest without due process of law.

### A.

■ We review a grant of summary judgment *de novo*. *Cincinnati Insurance v. Flanders Electric Motor Service*, 40 F.3d 146, 150 (7th Cir.1994).  Summary judgment is proper only when " 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' "  *Id.*  (quoting Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)).  "We view the record and all justifiable inferences drawn from it in the light most favorable to the party against whom judgment was entered."  *Fittshur v. Village of Menomonee Falls*, 31 F.3d 1401, 1405 (7th Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986)).

[A] court confronting a procedural due process question must make two separate inquiries.  First, the court must determine whether the plaintiff possesses a protected life, liberty, or property interest as a matter of substantive law.  If the first inquiry yields an affirmative response, the court must determine what procedure is due before the plaintiff can be deprived of the protected interest.

*Id.* (citing *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 541, 105 S.Ct. 1487, 1492, 84 L.Ed.2d 494 (1985)).

### B.

■ The City of Gary agrees with Jones's contention that he had a protected property interest in his civil service employment with the Gary Fire Department.  The parties do not agree, however, as to the type of due process required to protect that interest. Jones argues that even though Gary Ordinance Number 5882 § 7 allows a civil service employee to be suspended without a pre-suspension hearing, he was entitled to such a hearing, although he cites no case law to support his proposition that pre-suspension hearings are always necessary to protect a property interest.  The City contends that the post-suspension hearing provided for in the Ordinance sufficiently protected Jones's right to due process.

> "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim or entitlement to it. . . .  Property interests of course, are not created by the constitution.  Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law— rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."

*Mitchell v. Glover*, 996 F.2d 164, 167 (7th Cir.1993) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)).  "In order to give rise to a constitutionally protected property interest, a statute or ordinance must go beyond mere procedural guarantees to provide some substantive criteria limiting the state's discretion—as can be found, for example, in a requirement that employees be fired only 'for cause.' "  *Cain v. Larson*, 879 F.2d 1424, 1426 (7th Cir.), *cert. denied*, 493 U.S. 992, 110 S.Ct. 540, 107 L.Ed.2d 537 (1989) (citations omitted); *see also McQueeney v. Glenn*, 400 N.E.2d 806, 810 (Ind.Ct.App.1980), *cert. denied*, 449 U.S. 1125, 101 S.Ct. 943, 67 L.Ed.2d 112 (1981) (citations omitted) ("when cause is required before an employment relationship may be altered to the detriment of

the employee, due process protection attaches").

Gary City Ordinance 5882 § 7 explicitly provides that a civil service employee, such as a firefighter, may not be removed, suspended, demoted or discharged "except for cause." [19] Furthermore, "[t]he Supreme Court has held that the interest which a public employee has in his job is property within the meaning of the due process clauses of the Fifth and Fourteenth Amendments if he has tenure rights in the job—that is, if he can be fired only for misconduct," *Jungels v. Pierce*, 825 F.2d 1127, 1130 (7th Cir.1987) (citing *Loudermill*, 470 U.S. at 538–41, 105 S.Ct. at 1491–92), and Ordinance 5882 § 6 provides that firefighters had tenure "only during good behavior," meaning that they could only be suspended or discharged for misconduct. Thus, because Jones could be suspended only "for cause," he had more than a unilateral expectation in his continued employment with the Gary Fire Department. Jones had a protected property interest in his employment with the City of Gary Fire Department of which he could be deprived only with due process of law. *Fittshur*, 31 F.3d at 1405.

### C.

█ "Once it is determined that due process applies, the question remains what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). "Identification of the precise dictates of due process requires consideration of both the governmental function involved and the private interests affected by official action." *Fusari v. Steinberg*, 419 U.S. 379, 389, 95 S.Ct. 533, 539, 42 L.Ed.2d 521 (1974). Due process is a flexible concept that varies from case to case. *Zinermon v. Burch*, 494 U.S. 113, 127, 110 S.Ct. 975, 984, 108 L.Ed.2d

100 (1990). Therefore, although we generally require that any deprivation of a protected property interest "be preceded by notice and opportunity for hearing appropriate to the nature of the case," *Loudermill*, 470 U.S. at 542, 105 S.Ct. at 1493 (quotation omitted), there are exceptional cases in which post-deprivation hearings provide sufficient due process of law. *Federal Deposit Ins. Corp. v. Mallen*, 486 U.S. 230, 240, 108 S.Ct. 1780, 1787–88, 100 L.Ed.2d 265 (1988). "An important government interest, accompanied by a substantial assurance that the deprivation is not baseless or unwarranted, may in limited cases demanding prompt action justify postponing the opportunity to be heard until after the initial deprivation." *Id.* (citations omitted).

To facilitate the analysis of whether a post-deprivation hearing provides sufficient due process of law, the Supreme Court has enumerated three considerations:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interests through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interests, including the function involved and the fiscal and the administrative burdens that the additional or substitute procedural requirement would entail.

*Zinermon*, 494 U.S. at 127, 110 S.Ct. at 984 (quotation omitted).

█ Certainly, Jones's private financial interest in remaining gainfully employed is an important one that must not be "interrupted without substantial justification." *Mallen*, 486 U.S. at 243, 108 S.Ct. at 1789. The City of Gary does not contest that Jones had a significant private interest, but it does assert that its interests are more compelling than

---

**19.** Ordinance number 5882 (now codified in the City of Gary Code of Ordinances Section 35.065, *et seq.*), which adopted verbatim the language found in former Indiana Code sections 19–1–37.5–1, *et seq.*, provides, in relevant part:

(7) No person in the classified civil service who shall have been permanently appointed or inducted into civil service under provisions of this chapter, shall be removed, suspended, demoted or discharged *except for cause,* and only

upon the written accusation of the appointing power, or any citizen or taxpayer, a written statement of which accusation, in general terms, shall be served upon the accused, and a duplicate filed with the commission. The chief of the fire department may suspend a member pending the confirmation of the suspension by the regular appointing power under the chapter which must be within three days.

(Emphasis added.)

his in that the municipality must maintain a fully staffed, effective fire department at all times, and the only means by which it can properly manage, and thus maintain a full complement of firefighters is if the Chief has the authority to control his personnel, including the authority to suspend an AWOL firefighter when necessary, without a prior hearing so that he may be promptly replaced by a reliable employee and keep within the Fire Department's budgetary requirements.

The district court agreed with the City and found that its interests in maintaining a full complement of firefighters for the benefit of the entire community outweighed Jones's interest in his continued employment. The court reasoned that the

> problem with an AWOL firefighter is exactly that he is not coming to work. Waiting for a pre-suspension hearing prolongs the period of uncertainty as to the status of the AWOL firefighter.

> Moreover, the AWOL firefighter presents a unique dilemma for the fire chief in comparison to other firefighters who call off work for personal or health reasons. Unlike these firefighters, the fire chief cannot account for an AWOL firefighter. He has no way of knowing whether the firefighter will return to work. Thus, the fire chief is given a Hobson's choice of planning assignments as if the firefighter will not show up ... or hoping that the individual will return to work and trying to find a last minute replacement when the AWOL firefighter does not come to work. If the fire chief is unable to find a last minute replacement, the post may go unstaffed and public safety may be at risk. Given this risk, there is an obvious need for immediacy in determining the status of an AWOL firefighter.

The district court held that the post-suspension hearing was adequate protection of Jones's due process rights in light of the City's overriding interests in public safety.

Jones argues that the district court's grant of summary judgment was improper because the court relied solely on the City's unsupported statements in its brief in support of summary judgment. The City responds that the evidence in the record was sufficient for the court to reasonably infer that the authority to take prompt action is necessary when disciplining an AWOL firefighter because of the ramifications a delay could have on public safety. We agree.

The GFCSC Rules and Regulations provide clear support for the City's assertion that the Fire Department, acting through the Fire Chief, must have the authority to take prompt action when disciplining AWOL firefighters because its very existence is premised on its duty to protect the lives and property of those residing in that community. The preamble to the Rules states:

> [t]he presumption to be applied, when in doubt, is that a duty of care exists rather than not, that Orders are to be followed rather than discussed and that emergency response requires the strictest of discipline, as well as training, to be successful.... The primary purpose of an efficient Fire Department is to protect life and property. It is the duty of the fire person to serve the City faithfully, and to the best of his/her ability.

The duties of the firefighter include:

> (2) He shall fight all fires to the best of his ability, and carry out direct orders of his superiors in a timely manner. (3) He shall report for his company duty promptly, on time, and maintain strict adherence to all personnel rules of the department, orders of the chief, these rules and Civil Service Laws. (4) He shall immediately respond to all alarms, citizen contacts, or communications by the public, in a efficient manner.

GFCSCR (1988), Part II, RII–11. Based on these rules, we agree that the City has provided the court with sufficient evidence that firefighters have a position of utmost importance in protecting the public safety.

Furthermore, Jones's contention that the evidence in the record was insufficient for the district court to conclude that the Chief must take swift action in disciplining an AWOL firefighter is equally unconvincing. Jones asserts that the only evidence in the record are the unsworn statements in the City's memorandum in support of its motion for summary judgment; however, he is patently incorrect. Not only did the district

judge have the GFCSC Rules and Regulations, but he also applied his common sense and "judges need not put off their common sense when they put on their robes." *United States v. One Parcel of Land,* 965 F.2d 311, 322 (7th Cir.1992) (Posner, J., dissenting).

It is quite evident that if one member of the firefighting unit continuously fails to report for duty, the department will be understaffed. If an emergency situation arose in which an understaffed fire department is unable to respond in a timely and effective manner, the ramifications might very well be serious, perhaps even fatal. The Fire Chief must have the authority to promptly and effectively discipline his personnel, so that he might build and maintain the proper esprit de corp in his department. This authority must include the power to suspend and terminate employees "for cause," *i.e.,* for failure to report to duty without proper explanation for one's absence, for the Department cannot be left in a state of limbo while an AWOL firefighter decides, at his pleasure, if and when he will report to work.

The City's interest in having a full complement of firefighters outweighs Jones's protected property interest in his employment. Although Jones contends that the unsworn statements by the City in its motion were not sufficient evidence for the trial court to grant summary judgment, he also failed to submit evidence to rebut the City's contention that prompt action was required based on the facts and circumstances of this case.

Our last inquiry is about the magnitude of the risk of erroneously depriving Jones of his employment if he is not provided a pre-suspension hearing. "Central to the evaluation of any administrative process is the nature of the relevant inquiry." *Mathews v. Eldridge,* 424 U.S. 319, 343, 96 S.Ct. 893, 907, 47 L.Ed.2d 18 (1976). The only excuse Jones offers for his failure to report for duty is his alleged arthritic condition; thus the relevant inquiry in his case is a medical one. The Supreme Court has stated that medical assessments are "sharply focused and easily documented decision[s]" which usually turn on "routine, standard, and unbiased medical reports by physician specialists." *Id.* at 344, 96 S.Ct. at 907. "The potential value of an evidentiary hearing, or even oral presentation to the decision maker, is substantially less in this context." *Id.* at 344–45, 96 S.Ct. at 907.

Because Jones's medical condition was subjected to three independent evaluations, there was obviously a low risk of error. Furthermore, Chief Perry, the commanding officer, refrained from suspending the petitioner-appellant Jones until three separate agencies, the Local Pension Board, the PERF Board, and the ALJ all concluded, independent of each other, that Jones did not suffer from arthritis and thus was not entitled to a disability pension. In spite of the fact that, as Jones argues, the GFCSC may not have reviewed his suspension until it was a fait accompli, the record speaks for itself that the petitioner-appellant Jones received three independent levels of review regarding his disability claim and all three bodies concluded that he was not suffering from an arthritic disability, as alleged, to interfere with and/or prevent him from carrying on his duties as a Gary, Indiana firefighter. The review boards each evaluated Jones's medical history and findings of record,[20] and each, without a dissenting opinion, determined that he was fit to return to duty. Thus, there was no risk that Jones was erroneously deprived of his protected interest in employment without a pre-suspension hearing and thus we hold that Jones was not denied due process by the failure of the fire department to provide him with a pre-suspension hearing.[21]

---

**20.** Although Jones was ultimately granted a disability pension for an entirely different medical problem, *i.e.,* diabetes mellitus, *see, supra,* n. 16, his diagnosis of diabetes was not made until May 18, 1990, some thirteen months after his first suspension. Thus, the fact that Jones was granted a pension because of his diabetic condition is of no consequence.

**21.** The City of Gary also argues that temporary deprivations of protected property interests, such as suspensions, require less procedural protection than permanent deprivations. *Listenbee v. Milwaukee,* 976 F.2d 348 (7th Cir.1992). We disagree with the City of Gary's reliance on *Listenbee,* for in that case, we interpreted a statute of the state of Wisconsin, and the analysis was limited to the statute's provision that a civil service employee could be suspended, for cause, for

The concurring judge challenges this holding, writing that it establishes an "absolute abrogation of the pretermination hearing." We disagree with his interpretation and state that the opinion makes it eminently clear that we do not endorse an absolute elimination of pre-suspension hearings for firefighters, but rather, we hold only that this firefighter's property interests were sufficiently protected by his post-suspension hearing. We determined that the Gary Fire Department was in fact facing an emergency situation and thus, the Chief's actions were proper based on his knowledge of the needs of the department combined with the three administrative and medical evaluations dealing with the petitioner's claimed arthritic disability.

Although we hold that Jones's right to due process of law was protected with a post-suspension hearing, our inquiry does not end there. The post-suspension hearing must assure that Jones was provided with a "prompt proceeding and prompt disposition" of the merits of his suspension. *Barry v. Barchi*, 443 U.S. 55, 66, 99 S.Ct. 2642, 2650, 61 L.Ed.2d 365 (1979). While it is true that an unjustified delay in holding a hearing could become a constitutional violation,

> the significance of such a delay cannot be evaluated in a vacuum. In determining how long a delay is justified in affording a post-suspension hearing and decision, it is appropriate to examine the importance of the private interest and the harm to this interest occasioned by delay; the justification offered by the Government for delay and its relation to the underlying governmental interests; and the likelihood that the interim decision may have been mistaken.

*Mallen*, 486 U.S. at 242, 108 S.Ct. at 1788.

The parties do not dispute the facts about when Jones received hearings on his suspensions. The district judge stated that:

> up to fifteen days without a hearing, whether before or after suspension. Listenbee was suspended for ten days and thus, was not entitled to a hearing based on the applicable statute. In this case, however, Gary Ordinance Number 5882 § 7 specifically grants each suspended firefighter the right to an investigation, "held by a public hearing," in which Commissioners from the GFCSC examine the merits of his or her suspension.

on June 8, 1989, the Commission held a hearing regarding Jones's February 28, 1989, suspension and later termination. At that hearing, the Commission decided to affirm Jones's February 28, 1989, suspension, reinstate him as an employee subject to the outcome of his appeal to the PERF Board, and reimburse him for pay not received since March 29, 1989. Another hearing was held on March 28, 1990, in which the Commission terminated Jones and affirmed his suspensions which began September 1, 1989. Thus, approximately three months passed between Jones's first suspension and hearing, and six months passed between his next set of suspensions and hearing.

When we analyze the factors listed in *Mallen*, it becomes clear that the delays between Jones's suspensions and hearings were not so great, as alleged by Jones, as to deprive him of due process of law. It is true that Jones's interest in his job and salary are not insignificant. However, when balancing the rights of the individual firefighter and the facts of his case against the City of Gary's interest in maintaining a full complement of firefighters, it is clear that the City's interest is of greater importance than the private interests at stake in this case.

Additionally, while Jones's termination hearing was pending, the GFCSC did reinstate him with backpay, thereby protecting his private pecuniary interest. This court has held that the harm to the private interests caused by a delay is minimized by the ability of the review board to award back pay to the employee and reinstate him to his previous rank if the board deems that the employee has been wrongly deprived of his or her property interest. *Ciechon v. Chicago*, 634 F.2d 1055, 1059 (7th Cir.1980).[22] This

22. Jones relies upon *D'Acquisto v. Washington*, which expressed disapproval of our holding in *Ciechon*, for the proposition that a delay of even a few days between the suspension and post-suspension hearing violates due process. 640 F.Supp. 594, 614 (N.D.Ill.1986). However, in all the years since *D'Acquisto* was decided, we have had no cause to reverse our decision in *Ciechon*, nor do we see any in this case. We affirm the general principle enunciated in *Ciechon*, that the

is indeed what the GFCSC did in June, 1989 when it reinstated Jones and awarded him back pay as of March 29, 1989 pending the outcome of his appeal of his claim for a disability pension to the PERF Board.

Because we must evaluate the delays in the context of the entire record, *Mallen,* 486 U.S. at 242, 108 S.Ct. at 1788, we also must point out that there is ample evidence in the record that Jones contributed to the delays between his suspensions and his hearings. When Chief Perry informed Jones by letter that he was being suspended, each letter informed Jones of his right to appeal his suspensions to the GFCSC within ten days.[23] Although the City stated that Jones appealed his October, 1989 suspension, neither Jones nor the City has presented the court with any record of Jones requesting a hearing before the GFCSC. As the district court correctly noted, it is not unduly burdensome to require a person who is deprived of a protected property right to request a hearing on the matter. The speed with which Jones's appeals could have been heard surely would have been accelerated had he seen fit to even request a hearing on any of his suspensions.[24]

The final factor for determining whether Jones's post-suspension hearings were sufficiently prompt involves an examination of the likelihood that his suspensions were improper. *Id.* Jones's disability claim was previously reviewed and rejected by three different reviewing bodies and the nature of his claim made it an easy one to evaluate. Thus, the likelihood of error was slight.

The City of Gary presented sufficient evidence of all the relevant facts necessary to grant its motion for summary judgment: the City had a compelling interest in making sure that its Fire Department was fully staffed and able to efficiently and safely protect the public safety; the risk of suspending Jones without proper cause was slight in light of his three previous administrative hearings; and Jones was provided with sufficiently prompt post-suspension hearings to evaluate the propriety of the deprivation of his protected interests in his employment.

AFFIRMED.

RIPPLE, Circuit Judge, concurring in the judgment.

I agree with the panel majority that Mr. Jones has asserted a cognizable property interest in his continued employment as a firefighter for the City of Gary. I also agree that the recognition of that property interest requires that we inquire whether he has been afforded the process that is required by the Due Process Clause of the Fourteenth Amendment.

As my brothers note, this inquiry is governed by the holding of the Supreme Court in *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Under *Loudermill,* one of the required elements of due process is a predeprivation hearing that, although not necessarily elaborate, affords the public worker an opportunity to receive notice of the reasons for the adverse action and an opportunity to respond. *Id.* at 546, 105 S.Ct. at 1495. As my brothers note, there are circumstances in which the need for swift action on the part of those who exercise governmental authority and responsibility for the safety and security of others can justify the elimination or truncation of even the bare-bones pretermination hearing required by *Loudermill. See FDIC v. Mallen,* 486 U.S. 230, 108 S.Ct. 1780, 100 L.Ed.2d 265 (1988); *Barry v. Barchi,* 443 U.S. 55, 64–66, 99 S.Ct. 2642, 2649–50, 61 L.Ed.2d 365 (1979); *Dixon v. Love,* 431 U.S. 105, 112–15, 97 S.Ct. 1723, 1727–29, 52

promptness of post-deprivation proceedings must be analyzed within the framework the Supreme Court provided in *Mathews* and *Mallen,* in order to determine if such proceedings provided the private party with due process of law.

**23.** Ordinance 5882 § 7 provides, in relevant part: "Any person so removed, suspended, demoted or discharged may, within ten (10) days from the time of his removal, suspension, demotion or discharge, file with the commission a written demand for an investigation, whereupon the commission shall conduct such investigation."

**24.** Although the PERF Board hearing pertained to Jones's disability pension, rather than his suspension and termination, we note that he had a habit of delaying the administrative process during those proceedings as well. *See, supra,* note 7.

L.Ed.2d 172 (1977). Usually the asserted substantial public interest is a direct threat to the safety and security of the citizenry if the public employee is permitted to stay at his post. Nevertheless, there have been circumstances when considerations of administrative efficiency have been considered sufficient to justify abrogation of the usual *Loudermill* analysis. *See Dixon,* 431 U.S. at 114, 97 S.Ct. at 1728 (upholding state regulation requiring the immediate suspension of a driver's license upon a certain number of driving-related convictions within one year).

The maintenance of a ready and efficient firefighting force in an urban community is no small responsibility. As my brothers strongly emphasize, we should give significant weight to the need of those who assume that responsibility to ensure that every shift at every fire station is adequately staffed. I do not believe, however, that the record supports adequately a need for an absolute abrogation of the pretermination hearing, and I agree that we ought to be cautious before accepting such a representation. Although an officer in the position of the Gary Fire Chief can hardly wait for too long before replacing an AWOL firefighter, the record hardly supports the conclusion that he cannot at least make an effort to ensure that the individual has an opportunity to give him a meaningful explanation. Here, as my brothers point out, such an opportunity was afforded Mr. Jones. He well knew that the sole issue was whether he was physically disabled. He was afforded an opportunity to demonstrate that he could not fulfill the duties of a firefighter at the disability evaluation. It was only after that opportunity had been given him and he had then refused to return to duty that the Chief acted. The Supreme Court has noted that, when expeditious action is required by the public interest, opportunities other than a pretermination (or presuspension) hearing can suffice to meet the requirements of *Loudermill. See Mallen,* 486 U.S. at 241, 108 S.Ct. at 1788 (holding that an indictment by grand jury was sufficient, given the necessity for quick removal of a bank official).

My only difference with my brothers is one of emphasis. The majority does point out that Mr. Jones had an opportunity for an evaluation of his disability before he was suspended. As Justice Jackson's concurring opinion in *Woods v. Cloyd W. Miller, Co.,* 333 U.S. 138, 146, 68 S.Ct. 421, 425, 92 L.Ed. 596 (1948), suggests, Judges of the Third Article ought to view, with a healthy degree of skepticism, assertions by government officials that the demands of their positions require that they treat those they govern in a manner different from that usually required by the Due Process Clause. Here, however, we have no such bald assertion. The Chief acted in a common sense fashion after Mr. Jones had been given an opportunity to show that he was not disabled. The judgment of the district court ought to be affirmed.