Joyce CAMPANA, Plaintiff,

v.

The CITY OF GREENFIELD, Richard Eaton, James Palmar, Barbara Clark, Jeffrey Stone, Jerry Broitzman, Timothy Seider, and Edward Neudauer, Defendants.

No. Civ.A. 97–C–0754.

United States District Court, E.D. Wisconsin.

March 30, 1999.

"defendants"), as a result of a one-week unpaid suspension she received in 1996. Campana alleges that she was suspended in retaliation for testimony she provided at a hearing regarding the suspension of another city employee. Campana also alleges that the procedures used by City officials to decide on her suspension denied her procedural due process and violated the Wisconsin Open Meetings Law. The court has jurisdiction over Campana's § 1983 claims pursuant to 28 U.S.C. § 1343(a)(3), and supplemental jurisdiction over her Wisconsin Open Meetings Law claims pursuant to 28 U.S.C. § 1367(a). Currently before the court are cross-motions for summary judgment.

Michael J. Cohn, Zetley & Cohn, Milwaukee, WI, for plaintiff.

Mark D. Gundrum, Kasdorf, Lewis & Swietlik, Milwaukee, WI, for defendants.

**DECISION and ORDER GRANTING IN PART, AND DENYING IN PART, PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT and GRANTING IN PART, AND DENYING IN PART, DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

REYNOLDS, District Judge.

## I. INTRODUCTION

Plaintiff Joyce Campana ("Campana") is employed as treasurer for the City of Greenfield ("City"). Campana brings causes of action under 42 U.S.C. § 1983 and the Wisconsin Open Meetings Law, Wis.Stat. § 19.81–.98, against the City, and the City's mayor, common council members, and personnel director (collectively,

## II. FACTUAL BACKGROUND[1]

Campana began working as treasurer for the City in 1991, (see May 15, 1998 Joyce Campana Aff. ("Campana Aff.") ¶ 1), and continued to hold that position at the time this action was filed. (See July 11, 1997 Compl. ¶ 3.) The mayor of the City, defendant Timothy Seider ("Mayor Seider" or "the Mayor"), was elected to his position in 1995. (May 15, 1998 Michael J. Cohn Aff. ("Cohn Aff. I"), Attach. 3 at 31.) On October 21, 1996, the Mayor imposed a one-week unpaid suspension on Campana.

The events leading up to Campana's suspension date back at least to March 1996, when Mayor Seider began sending Campana "numerous memoranda informing her that her work performance was unsatisfactory, [and] noting her continuing refusal to follow appropriate administrative directive." (June 15, 1998 Defs.' Br., Statement of Facts ("DSOF") ¶ 4.) As his dissatisfaction with Campana persisted, the

---

1. Most background facts are taken from the parties' proposed findings of fact. *See* Local Rule 6.05 (E.D.Wis.). When there is no objection to proposed findings of fact, the court accepts them as true. Local Rule 6.05(d). In the background section, undisputed background facts do not contain citations; quoted or disputed facts do. Citations are also provided for non-material facts that the court found helpful in explaining the full background of the case. As to disputed facts, the court reviewed the portion of the record cited in support. Any factual statements which are disputed and do not have support in the record were disregarded by the court for purposes of this decision. If a disputed fact proposed by plaintiff is supported by the portion of the record cited, the court, for purposes of deciding this summary judgment motion, accepts the plaintiff's version as true.

Mayor requested that the issue of Campana's discipline be placed on the agenda for the Greenfield Common Council's ("the Council") July 16, 1996 meeting. The Mayor's request was granted and the Council posted a public notice of its agenda for the upcoming July 16 meeting. The portion of the agenda relating to the discussion of discipline for Campana read:

34. Council to go into closed session, pursuant to Wisconsin Statutes, Section 19.85(1)(b)(f) & (g) pertaining to disciplinary action concerning a city employee

35. Adjourn closed session and reconvene into open session

36. Discussion and decision pertaining to disciplinary action concerning a city employee

(Cohn Aff. I, Attach. 2e; June 15, 1998 Christopher A. Duesing Aff. ("Duesing Aff. I") Ex. A at Ex. 7.) Campana was not aware that she was the employee to be discussed at the meeting. The agenda did not mention Campana by name and none of the defendants informed Campana that she was the employee to whom the agenda referred. According to the Mayor, it was the Council's common practice not to publicly identify employees who were the subject of performance and disciplinary discussions. (Cohn Aff. I, Attach. 1 at 76; June 24, 1998 Christopher A. Duesing Aff. ("Duesing Aff. II"), Ex. A at 76.)

As scheduled, the Council met on July 16 in closed session to discuss possible discipline for Campana. While there are no official minutes of the closed-door meeting, informal notes of the Council's discussion were taken by Greenfield City Clerk Donna Rynders. Mayor Seider identified six areas of concern with Campana's work:

1) she made improper entries on her time sheets;

2) she did not turn in proper goals and objectives;

3) she did not follow a directive regarding absences;

4) she did not follow a directive regarding seminars and conferences;

5) her conduct at a personnel committee meeting; and

6) her failure to follow a directive regarding attending a meeting.

Mayor Seider brought approximately thirty documents to the meeting to substantiate his criticisms of Campana. (*See* Cohn Aff. I, Attach. 2b; Duesing Aff. I, Ex. A at Ex. 6.) The documents included memoranda and letters the Mayor had sent to Campana, correspondence and memoranda Campana had sent to the Mayor, and memoranda the Mayor had prepared to memorialize certain matters relating to Campana's alleged misconduct.[2] While these documents were not distributed at the meeting, Mayor Seider admits that he "read quite a few of them" to the Council. (Cohn Aff. I, Attach. 1 at 63.)

As discipline for Campana's alleged misconduct, Mayor Seider requested that the Council authorize him to give Campana a one-week unpaid suspension. The Mayor directed his request to the Council because the Council had appointed Campana to her position and, under the Greenfield Municipal Code, the power to suspend rests with the appointing authority. (*See* Cohn Aff. I, Attach. 1 at 52; June 24, 1988 Defs.' Br., Statement of Facts ("DSOF Resp.") ¶ 4; Duesing Aff. I, Ex. A at Ex. 1.) Although the record does not indicate that any formal votes were taken at the closed session, the Council did agree that the Mayor should schedule a meeting between himself, Campana, Campana's attorney, and the City's personnel administrator, defendant Edward Neudauer ("Neudauer"). The Council also agreed that the Mayor would be given authorization to suspend

**2.** The parties have not provided copies of these documents, but they have both submitted copies of a document that purports to briefly describe the contents of every item Mayor Seider brought to the meeting. (*See* Duesing Aff. I, Ex. A at Ex. 6; Cohn Aff. I, Attach. 2b.)

Campana for one week without pay if he so chose.

Immediately following the closed session, the Council reconvened in open session and voted to formally approve the decisions it had reached during its closed discussions. Two of the Council members, defendants Richard Eaton and James Palmar, voted against the proposals. The record does not indicate the wording of the questions the Council voted on in open session or whether Campana was identified by name during the Council's open-session discussions.[3] The parties agree that after the Council's vote, Mayor Seider needed no further action from the Council to suspend Campana.

Shortly after the Council's meeting another event occurred that, according to Campana, influenced the Mayor's decision to suspend her. On July 25, Campana testified at a Greenfield Civil Service Commission ("Civil Service Commission") hearing regarding the suspension of Greenfield City Assessor Merlin Everson ("Everson"). Mayor Seider had suspended Everson without pay over allegations that Everson had been running a personal business out of City offices. (*See* July 8, 1998 Michael J. Cohn Aff. ("Cohn Aff. II"), Attach. 1 (Decision and Order in *Everson v. Civil Service Commission*) at 2–3.) One issue at the Civil Service Commission's hearing was whether Everson had entered into a business contract with the City without the Council's full knowledge. In her appearance before the Civil Service Commission, Campana testified that she had been present at a Council committee meeting where the contract had been discussed and that the committee members were fully informed of the contract's terms. The Civil Service Commission upheld Everson's suspension, but a Wisconsin Circuit Court overturned the decision on appeal. (Cohn Aff. II, Attach. 1 at 6–

8.) Everson's defense counsel has filed an affidavit stating that he believes Campana's testimony was "crucial" to Everson's defense. (July 1, 1998 Mark A. Nielsen Aff. ¶ 4.) Campana believes that her suspension by Mayor Seider was an act of retaliation for her testimony in Everson's favor. The Mayor asserts that Campana's testimony did not affect either the outcome of the Civil Service Commission's proceedings or his attitude toward Campana.

The day after Campana's testimony, July 26, Mayor Seider sent Campana a memo requesting a meeting. According to the memo, the purpose of the meeting was "to attempt to rebuild [their] relationship." (Cohn Aff. I, Attach. 2g; Duesing Aff. I, Ex. A at Ex. 15.) The Mayor noted in the memo, "For the last six months there have been a number of memos exchanged between us. Either I have requested you to provide information, to comply with City policy, or to cease and desist from doing certain things." (*Id.*) The memo did not inform Campana that the Council had authorized the Mayor to suspend her without pay.

The meeting was held on July 31, 1996. Present were Campana, her attorney, the Mayor, and Neudauer. The parties have provided few details of what was discussed. The general topics of discussion were Campana's alleged failures to follow administrative directives, to bring administrative issues to the Mayor's attention, and to inform the Mayor of her absences. Despite his newly-acquired disciplinary authority, the Mayor did not suspend Campana at the conclusion of the meeting. The parties dispute whether after the meeting Campana adjusted her work behavior to address the Mayor's concerns.

Mayor Seider scheduled another meeting with Campana for October 21, 1996.

---

**3.** Campana asserts in her brief that she was not identified by name in the Council's vote. (*See* Pl.'s Mem. at 13.) Campana's statement of facts and the record, however, do not support this assertion. Campana's statement of

facts asserts merely that "[t]he Council *agenda* for the open session did not identify Campana as the employee at issue." (May 15, 1998 Pl.'s Mem., Statement of Facts (PSOF) ¶ 15 (emphasis added).)

In preparation for the meeting, the Mayor sent Campana a memo on October 15, stating:

> The purpose of this memo is to inform you that I am contemplating taking disciplinary action against you for your continual failure to follow appropriate administrative directive. Before taking any action, I believe a conference is in order which you and your representative should attend.

(Cohn Aff. I, Attach. 2a; Duesing Aff. II, Ex. A. at Ex. 2.) The memo did not inform Campana of the issues the Mayor had presented to the Council nor that the Council had already authorized her suspension. The Mayor did not send Campana any other written notice of the matters that would be discussed at the meeting. The court could find no information in the record describing any communications Campana and the Mayor may have had during the time between their July 31 meeting and the October 15 memorandum.

Again, the parties provide only a general description of what was discussed at the October 21 meeting. Campana's deposition testimony indicates that her attorney, Mayor Seider, and Neudauer were present at the meeting. (*See* Cohn Aff. I, Attach. 3 at 89.) The parties agree that the Mayor and Campana discussed "problems" with Campana's performance, (Cohn Aff. I, Attach. 3 at 90; Duesing Aff. II, Ex. B at 90), including some discussion of Campana's time sheets and of Campana not signing a personnel evaluation. The Mayor did not inform Campana that the Council had authorized him to suspend her[4] or of the content of his presentation to the Council at its July 16 session. At the close of the meeting, the Mayor told Campana that she would be suspended without pay for one week.

Campana's suspension became effective that same day upon the filing, by Mayor Seider, of a written report to the Civil Service Commission stating the grounds for his action. The Mayor asserted that Campana had violated Greenfield Civil Service Rule VI, Sections 1(c) and (e), which provide:

> The following are the cause for discipline. That an employee:
>
> c. Is inefficient, insubordinate or neglects his duty or is intoxicated while on duty.
>
> e. Refuses to obey a lawful and reasonable order, rule or regulation.

(Duesing Aff. II, Ex. A at Ex. 7.) Inexplicably, the parties have not filed a copy of the Mayor's report to the Commission. Instead, defendants have filed a November 11, 1996 letter from the Mayor to plaintiff's counsel referencing the report. In that letter the Mayor stated the following four reasons for Campana's suspension:

> 1. MAKING NOTATIONS ON HER PERSONAL TIME SHEET ABOUT OTHER EMPLOYEES; ...
>
> 2. FAILURE TO PROMPTLY NOTIFY THE MAYOR OR HIS/HER DESIGNEE OF HER ABSENCES DUE TO PERSONAL ILLNESS; ...
>
> 3. FAILURE TO SIGN HER EVALUATION FORM;
>
> 4. REFUSAL TO ATTEND EVALUATION CONFERENCE WITH THE MAYOR UNLESS ALLOWED TO TAPE RECORD THE CONFERENCE ....

(*Id.*) (upper case in original).

After that letter, the record falls silent until February 5, 1997. On that date the Council voted to rescind Campana's suspension and reinstate the pay she had lost during that time. The parties have placed nothing in the record explaining the Council's decision.

Campana has filed an affidavit stating that she has suffered emotional pain and distress as a result of being suspended

---

**4.** Defendants assert that "it is not clear whether Mayor Seider specifically informed Ms. Campana that the Council had authorized him to suspend her," (DSOF Resp. ¶ 23), but defendants cite no evidence to support this supposed ambiguity.

without notice and the opportunity to be heard. She believes that had she been given the opportunity to be properly heard, she would not have been suspended. Her suspension, she claims, caused harm to her reputation among her co-workers. She also claims to have incurred considerable attorney's fees in her attempt to remedy her suspension. Defendants argue that any reputational harm Campana suffered was the result of her decision to discuss her case with members of the local news media. They also urge that her damages from any denial of due process should be limited to nominal damages of one dollar.

## III. ANALYSIS

### A. Summary Judgment Standard

Campana and defendants both move for summary judgment in their favor. The court must grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, admissions, and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment has the initial burden of asserting the absence of any dispute of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Material facts are those facts which, under the governing substantive law, "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To withstand summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

Even if some facts are in dispute, entry of summary judgment is in order if the movant either establishes uncontroverted facts entitling it to summary judgment or demonstrates that the non-moving party has failed to make a sufficient showing on an essential element of its case with respect to which it will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322–23,

106 S.Ct. 2548. The court must draw all reasonable inferences from the record in favor of the nonmoving party. *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv.,* 40 F.3d 146, 150 (7th Cir.1994).

### B. Legislative Immunity of Common Council Members

Defendants argue that the doctrine of legislative immunity shields the Council members from individual liability in this action. In support of their contention, defendants cite the Supreme Court's recent decision in *Bogan v. Scott–Harris,* 523 U.S. 44, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998). The Court in *Bogan* held that "[l]ocal legislators are entitled to absolute immunity from § 1983 liability for their legislative activities." *Id.* at 972 (emphasis added). Defendants contend that the Council's vote giving Mayor Seider the authority to suspend Campana was a protected legislative activity under *Bogan.* The court does not agree.

■ Local legislators are only entitled to absolute immunity for their *legislative* activities. *See id.* The *Bogan* Court found that a decision by local legislators to eliminate an employment position from local government was clearly a legislative act. The Court contrasted that situation with "the hiring or firing of a particular employee," which the Court implied would not be considered a legislative act. *Id.* The distinction, according to the Court, was that the former activity "may have prospective implications that reach well beyond the particular occupant of the office." *Id.* at 973.

■ The absolute immunity discussed by the Court in *Bogan* does not apply to the Council members in this case. The Council's vote allowing Mayor Seider to suspend Campana was not a legislative activity. The Council members' action had no implications for the position of city treasurer in general; the vote was an administrative act narrowly focused on the discipline of a particular city employee. The

Council was the authority that had appointed Campana to her position as treasurer, and its vote was merely part of its responsibility to oversee her job performance.

### C. First Amendment Retaliation Claim

Campana alleges that Mayor Seider violated her rights under the First Amendment of the United States Constitution because he suspended her in retaliation for her testimony at the Civil Service Commission's hearing on City Assessor Everson's suspension. Campana argues that her "crucial role in thwarting defendants' disciplinary action against Everson coupled with the timing of [her] suspension, and the pettiness of the charges against her create a reasonable inference that her suspension was the result of unlawful retaliatory animus." (July 9, 1998 Pl.'s Br. In Resp. at 11.)

"To recover on a First Amendment retaliation claim, a plaintiff must prove (1) that speech [she] engaged in was constitutionally protected under the circumstances, ... and (2) that defendants retaliated against [her] because of that speech." *Gorman v. Robinson,* 977 F.2d 350, 354 (7th Cir.1992) (internal quotation marks and citations omitted). The parties have not addressed whether Campana's testimony before the Civil Service Commission was constitutionally-protected speech. The court also finds it unnecessary to address that issue as Campana has failed to produce sufficient evidence that she was suspended because of her testimony.

██ The Mayor's concerns with Campana extended back at least until March 1996. The Mayor and the Council met on July 16 to discuss suspending Campana. Campana's testimony before the Civil Service Commission did not occur until July 25. The next day, the Mayor requested the meeting with Campana "to attempt to rebuild [their] relationship." (Cohn Aff. I, Attach. 2g; Duesing Aff. I, Ex. A at Ex. 15.) The meeting took place on July 31 and Campana was *not* suspended at the end of it. The timing of those meetings may have seemed awfully coincidental to Campana at the time, but Campana was then unaware of the Mayor's earlier discussions with the Council. Campana has produced no evidence that the Mayor and the Council were aware of Campana's impending testimony when they met on July 16 to authorize her suspension. The court must conclude that the Mayor and the Council decided to suspend Campana before they had any knowledge that she might present unfavorable testimony to the Civil Service Commission. Therefore, the court will grant summary judgment in favor of defendants on Campana's First Amendment retaliation claim.

### D. Wisconsin Open Meetings Law Claim

Campana claims that defendants violated Wisconsin's Open Meetings Law when they met on July 16 in closed session to discuss disciplining her. Campana argues that the Council's meeting was an "evidentiary hearing" at which "final action" was taken regarding her discipline and, thus, the law obligated the Council to provide her with actual notice of that closed-door proceeding.

The Wisconsin Open Meetings Law requires that, in general, every meeting of a governmental body be open to the public and be preceded by adequate public notice. *See* Wis.Stat. § 19.83. The law does contain a limited number of exemptions for certain governmental meetings where the need for confidentiality may outweigh the public interest in full disclosure. *See* Wis. Stat. § 19.85. Certain personnel matters are among those topics for which a closed meeting may be held. *See* Wis.Stat. § 19.85(1)b),(c), and (f). In this action, the Council premised its authority to close its meeting on Wis.Stat. § 19.85(1)(b),(c), and (g). The court finds that only Wis.Stat. § 19.85(1)(b) provides a basis for closing the meeting with respect to Campana. That paragraph allows a closed meeting to be held for the purpose of considering "discipline of any public employe," Wis.

Stat. § 19.85(1)(b). Section 19.85(1)(b) does not create an absolute right to close a meeting; the employee whose discipline is being discussed must be "given actual notice of any evidentiary hearing which may be held prior to final action being taken and of any meeting at which final action may be taken." Wis.Stat. § 19.85(1)(b). A closed session may not be held if the employee requests that the evidentiary hearing or meeting be held in open session. *See id.*

In this action, Campana argues that the Council was required to give her actual notice of its closed session regarding her discipline because that proceeding was both an evidentiary hearing and a meeting at which final action was or might have been taken. Defendants respond that although specific instances of Campana's alleged misconduct were discussed during the closed session, such discussions are inherent in the consideration of a disciplinary matter and do not rise to the level of an "evidentiary hearing." Defendants also argue that their actions during the closed session did not constitute "final action" because the formal vote regarding Campana's discipline was taken during the subsequent open session.

■ The court has no trouble concluding that the Council's closed session was not a meeting at which final action was or might have been taken.˙ The Council's posted agenda for the meeting clearly indicated that the Council would reconvene in open session to render its decision. The Council adhered to the terms of its notice. While the Council may have reached a consensus during its closed session, its formal vote on the matter occurred in open session. The Council's action regarding Campana's suspension was not "final" until that vote took place. There was never any indication that the Council might have taken final action during its closed session.

■ Whether the Council's closed session was an "evidentiary hearing" under the Open Meetings Law is a more difficult

question. The term is not defined in the statute and there is scant case law on the issue. The Wisconsin Attorney General has provided one definition of the phrase:

I consider the words "evidentiary hearing" as meaning a formal examination of *charges* by the receiving of testimony from interested persons, irrespective of whether oaths are administered, and receiving evidence in support or in defense of specific charges which may have been made. Where an evidentiary hearing is held, the parties are entitled to seasonably know the charges and claims preferred, have a right to meet such charges or claims by competent evidence, and the right to be heard by counsel upon the probative force of evidence adduced and upon the law applicable thereto.

66 Op. Att'y Gen. 211, 214 (Wis.1977) (emphasis in original). While the attorney general's opinion is a step in the right direction, it relies heavily on the term "charges," which is not defined in the opinion or the statutes. Black's Law Dictionary defines "charge," as simply "to accuse." Black's Law Dictionary 232 (6th ed.1990). Giving the statute the liberal construction the Wisconsin Legislature intended, *see* Wis.Stat. § 19.81(4), it is reasonable to conclude that the "evidentiary hearing" exception should encompass accusations of any form that may be relevant to the types of actions covered by sec. 19.85(1)(b). Combining this interpretation with the definition provided by the attorney general, the court finds that the term "evidentiary hearing" as used in Wis.Stat. § 19.85(1)(b), means a formal examination of accusations, by the receiving of testimony or other forms of evidence, that may be relevant to the dismissal, demotion, licensing, or discipline of any public employee or person covered by that section.

■ Applying this definition to the present action, the court finds that the Council's July 16 closed-session discussion of Campana's discipline was an evidentiary hearing under the Wisconsin Open Meet-

ings Law. The Mayor accused Campana of being deficient in six specific areas of her work. The Mayor's purpose in making these accusations was to support his request that he be given authority to suspend Campana. To substantiate his accusations, the Mayor brought along over thirty documents evidencing Campana's alleged deficiencies, read from "quite a few" of those documents, and presented his own testimony describing Campana's alleged deficiencies. Because the Council's meeting was an "evidentiary hearing," the Wisconsin Open Meetings Law required the Council to provide Campana with "actual notice" of the meeting and inform her of her right to demand that the meeting be held in open session. The Council did not provide Campana with such notice. The court will grant summary judgment in favor of Campana on her Wisconsin Open Meetings Law claim.

**E. Procedural Due Process Claims**

Campana claims that the procedures used by defendants in suspending her did not satisfy the Due Process Clause of Fourteenth Amendment of the United States Constitution. Campana argues that she has a property interest in continuous employment and that defendants may not impair that interest without affording her appropriate procedural protections. Defendants argue that Campana's property interest does not include a right to suspension-free employment, and that even if it does include such a right, they provided Campana with sufficient procedure prior to suspending her.

 Procedural due process questions involve a two-step inquiry. "First, the court must determine whether the plaintiff possesses a protected life, liberty, or property interest as a matter of substantive law. If the first inquiry yields an affirmative response, the court must determine

what procedure is due before the plaintiff can be deprived of the protected interest." *Jones v. City of Gary*, 57 F.3d 1435, 1440 (7th Cir.1995) (citing *Fittshur v. Village of Menomonee Falls*, 31 F.3d 1401, 1405 (7th Cir.1994)).

**1. Extent of Campana's Property Interest in Employment**

 A public employee does not obtain a property interest in continuous employment merely because she is employed. The extent of an employee's property interest is defined by the rules and understandings that govern her employment. *See Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). A municipal employee's property interest in employment may be defined by relevant provisions of local ordinances. *See Jones*, 57 F.3d at 1440. "In order to give rise to a constitutionally protected property interest, [an] ordinance must go beyond mere procedural guarantees to provide some substantive criteria limiting the [employer's] discretion—as can be found, for example, in a requirement that employees be fired only 'for cause.'" *Id.* (quoting *Cain v. Larson*, 879 F.2d 1424, 1426 (7th Cir.1989)).

To define the extent of Campana's property interest in her employment with the City, we look to the provisions of the Greenfield Municipal Code ("Greenfield Code") and Greenfield Civil Service Rules ("Civil Service Rules"). The parties agree that certain provisions of the Greenfield Code and Civil Service Rules governed Campana's suspension.[5] The Greenfield Code sec. 4.16 provides:

*SUSPENSION* AND *DISMISSALS*. (1) . . . [W]henever an appointing authority believes that an officer or employee in the classified service in his department has acted in such a manner as to show him/her to be incompetent or

---

5. The parties did not include these Greenfield Code and Civil Service Rule provisions in their findings of fact. However, the parties' briefs and affidavits make clear that they be-

lieve these provisions applied to Campana's suspension. (*See* Pl.'s Mem. at 9; Duesing Aff. I, Ex. A. at Ex. 1; *id.* at Ex. 7.)

has merited suspension, demotion or dismissal, he/she shall report in writing to the [Civil Service] Commission setting forth specifically his/her complaint and may suspend the officer or employee at the time such complaint is filed. The Commission shall forthwith notify the accused officer or employee in writing of the filing of such charge and on request provide him with a copy of the same.

(2) Upon written request made within 5 days of notification of the filing of such charges, the officer or employee may have a hearing on such charges.... At the termination hearing, the Commission shall determine whether or not the charge is well founded and shall take such action by way of suspension, demotion, discharge or reinstatement as it may deem proper under the circumstances and as its rules may provide. The decision of the Commission shall be final.

(Duesing Aff. I, Ex. A at Ex. 1.) (emphasis added). The Civil Service Rules provide:

The following are the cause for discipline. That an employee:

c. Is inefficient, insubordinate or neglects his duty or is intoxicated while on duty.

e. Refuses to obey a lawful and reasonable order, rule or regulation.

(Duesing Aff. I, Ex. A at Ex. 7.)

Defendants argue that Greenfield Code sec. 4.16 defines Campana's property interest in her employment in such a way that she may be suspended immediately upon the filing of charges with the Civil Service Commission, without the need for any additional pre-suspension process. Defendants base their argument on that portion of sec. 4.16 stating "an appointing authority ... may suspend the officer or employee at the time such complaint is filed." In defendants' view, Campana was not deprived of a property interest because her interest is defined by the ordinance, the ordinance allows for suspension at the time of filing of a complaint, and the

Mayor followed that procedure in carrying out her suspension.

Defendants' argument confuses sec. 4.16's procedural and substantive aspects. Procedural due process analysis draws a distinction between provisions of state or local law defining the substance of a public employee's property interest, and provisions specifying the procedures for deprivation of that interest. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 541, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Substantive provisions tell us *why* a public employee may be deprived of employment, while procedural provisions tell us *how* the employee may be deprived. A substantive provision, for example, might be one stating that an employee may not be suspended except for malfeasance in office. *Cf. id.* at 538–39, 105 S.Ct. 1487 (in context of dismissal). A procedural provision might be one requiring that a suspended employee be told the reasons for her suspension. *Cf. id.* Only substantive provisions are relevant to determining the extent of an employee's property interest in employment. *See Jones,* 57 F.3d at 1440.

The Supreme Court in *Loudermill* made it clear that procedural provisions do not define a public employee's property interest. The employer in that case made an argument similar to that of defendants here, contending that its employee's property interest was "defined by, and conditioned on, the legislature's choice of procedures for its deprivation." *Loudermill,* 470 U.S. at 539, 105 S.Ct. 1487. "To require additional procedures," the employer argued, "would in effect expand the scope of the property interest itself." *Id.* at 540, 105 S.Ct. 1487 (citation omitted). The Court rejected this argument, stating, " 'Property' cannot be defined by the procedures provided for its deprivation...." *Id.* at 541, 105 S.Ct. 1487.

Defendants point to this court's decision in *Listenbee v. City of Milwaukee,* 753 F.Supp. 780 (E.D.Wis.1990), *aff'd,* 976 F.2d 348 (7th Cir.1992), as support for their argument regarding the substantive limits

on Campana's property interest created by Greenfield Code sec. 4.16. The plaintiff in *Listenbee* was an employee of the City of Milwaukee who had been suspended without pay for ten days without a pre–or post–suspension hearing. *See* 976 F.2d at 351. The relevant Wisconsin statute specified that employees in the plaintiff's position could only be "removed, discharged or reduced" for just cause, but also provided that "*[n]othing* in [the statutes] shall limit the power of an officer to suspend a subordinate for a *reasonable* period not exceeding 15 days." *Id.* (quoting Wis.Stat. § 63.43) (emphasis in original). The plaintiff argued that the suspension provision was not a substantive limitation on her property right. *See id.* at 352. This court and the Seventh Circuit rejected that view. *See id.* at 353. Read as a whole, the statute defined the employee's property right as including the right be removed, discharged or reduced only for just cause, but permitting a fifteen-day suspension for any reason at all. *See id.* Because the plaintiff did not possess a right to suspension-free employment, he was not entitled to procedural due process when he was suspended. *See id.* at 349.

■ This case is not *Listenbee*. Defendants have not shown the court any provision of the Greenfield Code or Civil Service Rules that grants the City an unfettered right to suspend Campana. That portion of the Greenfield Code permitting suspension upon the filing of a complaint is merely a procedural provision specifying *how* a suspension must be carried out.

The substantive provisions of sec. 4.16 and the Civil Service Rules tell us *why* Campana may be suspended. Section 4.16 provides that an employee may be suspended or dismissed only if the appointing authority "believes that ... [the employee] has acted in such a manner as to show him/her to be incompetent or has merited suspension, demotion or dismissal." (Duesing Aff. I, Ex. A at Ex. 1.) The Civil Service Rules specify that there must be "a cause" for discipline. (*See* Duesing Aff.

I, Ex. A at Ex. 7.) These provisions make it clear that Campana was not an at-will employee; the Mayor or the Council had to have some reason for seeking her suspension. Thus, Campana had a property interest in continuous employment, an interest that is protected by the Due Process Clause.

### 2. Constitutionality of the Procedures Used in Campana's Suspension

Defendants argue that the procedures they followed in suspending Campana satisfied the requirements of procedural due process. The Greenfield Code, they point out, guarantees Campana a prompt post-suspension hearing. In addition, defendants contend that Campana was provided ample notice of the allegations against her through the numerous memoranda Mayor Seider sent to her regarding her conduct and that Campana received notice and an opportunity to be heard at her July and October meetings with Mayor Seider.

■ At a minimum, procedural due process requires that "[t]he tenured public employee [receive] oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Loudermill,* 470 U.S. at 546, 105 S.Ct. 1487. The Supreme Court in *Gilbert v. Homar,* 520 U.S. 924, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997), suggested that the need for a pre-suspension hearing is not great when the suspension is for a short duration and involves relatively little income. *See id.* at 932, 117 S.Ct. 1807. Given that Campana's suspension was for only one week, her pre-suspension meeting with Mayor Seider on October 21 had the potential to serve as adequate pre-suspension process.

■ The meeting did not fulfill that potential, however, because Campana never received sufficient notice of the allegations on which the Mayor and the Council based her suspension. It is undisputed that defendants did not notify Campana

about the Council's July 16 meeting. At that meeting, the Council based its decision to grant the Mayor authority to suspend Campana on six specific alleged deficiencies in Campana's performance. Defendants have not suggested that the Council would have granted the Mayor suspension authority based on only two or three of those allegations. Thus, to be fully informed of the basis for her suspension, Campana had to be informed of all six alleged deficiencies presented to the Council. Yet even after her suspension, the Mayor never informed Campana of all six allegations. Defendants assert that the "numerous memoranda" Campana received prior to the July 16 Council meeting adequately apprised her of the basis for her suspension. These various documents were sent over a period from March 1996 to July 1996 and touched on a variety of subjects. These memos are not in the record and, even if they were, it would not be reasonable to conclude that they provided Campana with sufficient notice of the specific subjects that would be discussed at a meeting that occurred at least three months later. The Mayor's July 26 letter scheduling the July 31 meeting refers only to "a number of memos exchanged between us" regarding requests that Campana "provide information" or "comply with City policy," or stop doing "certain things." (Cohn Aff. I, Attach. 2g; Duesing Aff. I, Ex. A at Ex. 15.) At the July 31 meeting itself, the parties discussed only Campana's failures to follow "administrative directives," to bring administrative issues to the Mayor's attention, and to inform the Mayor of her absences. (*See* DSOF ¶ 23; July 9, 1998 Pl.'s Resp. Br. ("Pl.'s Resp."), Statement of Facts ¶ 6.) The Mayor's October 16 letter referred only to Campana's "continual failure to follow appropriate administrative directive." (Cohn Aff. I, Attach. 2a; Duesing Aff. II, Ex. A at Ex. 2.) As for the October 21 meeting itself, the Mayor discussed "problems" with Campana's performance, (Cohn Aff. I, Attach. 3 at 90; Duesing Aff. II, Ex. B at

90), including problems with Campana's time sheets and her failure to sign a personnel evaluation; he did not confront Campana with all six of the alleged deficiencies on which the Council had premised his authority to suspend Campana.

Nor did the Mayor inform Campana at the October 21 meeting that the Council had authorized him to suspend her. Campana was in the dark about this significant delegation of authority until after she was suspended. Thus, Campana was unaware of the severity of the discipline she faced. The Mayor has testified that under normal circumstances he could only issue a letter of reprimand to Campana. (Cohn Aff. I, Attach. 1 at 52.) Campana might have prepared more thoroughly for the October 21 meeting had she known she faced possible suspension.

Deficiencies in the Mayor's pre-suspension process might have been remedied by any post-suspension hearing provided to Campana. But again, the Mayor's failure to adequately inform Campana of the basis for his suspension powers eliminated the efficacy of post-suspension process. The Mayor's November 11 letter to Campana lists four reasons for his action: 1) Campana's making notations on her time sheet; 2) Campana's failure to notify the Mayor of her absences; 3) Campana's failure to sign an evaluation form; and 4) Campana's refusal to attend an evaluation conference with the Mayor unless allowed to tape record the conference. Only two of those items—problems with the time sheets and absences—were presented to the Council. The remaining two grounds for suspension seem to have arisen after the Council's decision.

The court finds that the procedures used by Mayor Seider in suspending Campana failed to satisfy the procedural due process requirements of the United States Constitution. The court will grant summary judgment in favor of Campana against Mayor Seider and the City on this claim. However, Campana has not presented any

reason for holding the Council members liable for the denial of due process. The court will dismiss Campana's procedural due process claims against the Council members.

## F. Impermissibly Vague Delegation of Authority

In her response to defendants' motion for summary judgment, Campana raises for the first time a claim that the Council's delegation of its suspension authority to Mayor Seider was "impermissibly vague." (Pl.'s Resp. at 16.) Ironically, it is somewhat difficult to determine the precise nature of this claim. The cause of action was not identified in her complaint. While this does not doom her claim, Campana does little to clarify the matter in her brief.

Campana never specifies the exact legal basis for her claim. She suggests that the claim is constitutional, but does not say whether it arises under the United States Constitution, the Wisconsin Constitution, or both. Campana cites a federal court decision, *Wisconsin Student Assoc. v. Regents of University of Wisconsin*, 318 F.Supp. 591 (W.D.Wis.1970), in support of her argument, but the case deals with impermissible delegations of authority that restrict First Amendment rights; the decision is not sufficiently analogous to the current action to find that Campana has pled a claim under the United States Constitution. Campana also cites to a Wisconsin Court of Appeals decision, *Milwaukee County v. Milwaukee District Council 48*, 109 Wis.2d 14, 325 N.W.2d 350 (Ct.App. 1982), involving a challenge to Wisconsin's Municipal Employment Relations Act on the grounds that it impermissibly delegated legislative power under the Wisconsin Constitution. *See id.* at 22–24, 325 N.W.2d at 354–55. That case, however, dealt with a delegation of authority by the Wisconsin Legislature in a context far removed from our own. Campana has presented no authority actually supporting the proposition that the rule cited in *Milwaukee District Council 48* would apply to the circumstances at issue here.[6]

It is possible that Campana has a valid claim, but it is her job to present it to the court. Campana has simply not put enough effort into articulating her argument that the Council engaged in an unconstitutional delegation of authority. The court will dismiss that claim.

## G. Sufficiency of Campana's Evidence Regarding Damages

■ Defendants argue that Campana's claims should be dismissed because she has not provided sufficient evidence that she suffered any damages, and that any damages she has suffered were either nominal, or caused by Campana's own discussions of her case with local news media. Campana has provided an affidavit stating that she suffered damages in the form of emotional pain and distress, damage to reputation, and attorney's fees, as a result of defendants' actions. Campana's affidavit is sufficient to allow her to survive summary judgment. However, the court finds that there is a material issue of fact regarding the amount of Campana's damages. The court will deny both parties' motions for summary judgment as they pertain to Campana's damages.

## H. Claims Against Edward Neudauer

Campana has produced no evidence that defendant Neudauer was responsible for any of the actions that provide the basis for her claims. At best, Neudauer was simply a witness to these events. The will court will dismiss all claims against Neudauer.

## IV. CONCLUSION

The court grants summary judgment in favor of defendant Edward Neudauer as to

---

**6.** Campana cites *City of Milwaukee v. Rissling*, 184 Wis. 517, 520, 199 N.W. 61 (1924), but the case does not support her proposition.

all of plaintiff's claims. All claims against defendant Edward Neudauer are **DISMISSED**.

Plaintiff Joyce Campana's motion for summary judgment is **GRANTED** as to all remaining defendants on her claims under Wisconsin's Open Meetings Law, Wis.Stat. § 19.81–.98.

Plaintiff's motion for summary judgment on her claim under 42 U.S.C. § 1983, for violation of her right to procedural due process under the Fourteenth Amendment, is **GRANTED** as to defendants City of Greenfield and Timothy Seider and **DENIED** as to defendants Richard Eaton, James Palmar, Barbara Clark, Jeffrey Stone, and Jerry Broitzman.

Plaintiff's motion for summary judgment is **DENIED** as to her claim under 42 U.S.C. § 1983 for retaliation in violation of her rights under the First Amendment, and as to her claim for impermissibly vague delegation of authority.

The motion for summary judgment by defendants the City of Greenfield, Richard Eaton, James Palmar, Barbara Clark, Jeffrey Stone, Jerry Broitzman, Timothy Seider, and Edward Neudauer, is **GRANTED** as to plaintiff's claim under 42 U.S.C. § 1983 for retaliation in violation of her rights under the First Amendment, and as to plaintiff's claim for impermissibly vague delegation of authority.

The motion for summary judgment by defendants is **DENIED** as to plaintiff's claims under the Wisconsin's Open Meetings Law, Wis.Stat. § 19.81–.98, and her claims under 42 U.S.C. § 1983 for violation of her right to procedural due process under the Fourteenth Amendment.

The courtroom deputy clerk will notice a telephonic conference to schedule a trial on the issue of plaintiff's damages.